STATE OF NEBRASKA, APPELLEE, v. GERMAN SAVINGS BANK, APPELLANT.

FILED FEBRUARY 16, 1897. No. 9000.

1. **Banks and Banking**: INSOLVENCY: AUTHORITY OF RECEIVER: PARTIES. In a proceeding under chapter 8, Compiled Statutes, to wind up an insolvent banking corporation, the corporation, even after consenting to the appointment of a receiver, remains an interested party and may be heard to resist an application for an order conferring authority upon the receiver not within the original order appointing him.

2. **Order on Receiver to Sue Stockholders**: REVIEW. An order was made *ex parte* directing a receiver to sue stockholders for their unpaid subscriptions. The defendant corporation moved to discharge the order. The motion was overruled and the corporation excepted. *Held,* That it might appeal from this order.

3. **Banking Corporations**: INSOLVENCY: LIABILITY OF STOCKHOLDERS: ENFORCEMENT OF CLAIMS. The constitution provides: "In all cases of claims against corporations and joint stock associations, the exact amount justly due shall be first ascertained, and after the corporate property shall have been exhausted, the original subscribers thereof shall be individually liable to the extent of their unpaid subscriptions." (Constitution, art. 11, sec. 4.) The banking act (Compiled Statutes, ch. 8, sec. 35) provides: "Whenever any receiver or any incorporated bank shall file a report with the court or judge thereof, setting forth the fact that in the opinion of such receiver, the assets of such bank are not sufficient to pay the liabilities of such bank within a reasonable time, the court or judge may order such receiver to proceed at once to collect from the several stockholders of such bank, who are liable therefor, any or

all such liabilities as shall be necessary for the payment of all the liabilities of such bank." *Held,* (1) That this statute refers to liabilities of stockholders upon their stock; (2) that the constitution makes the liability of subscribers for unpaid subscriptions for the purpose of paying debts of the corporation a secondary liability, to be enforced only after the amount of the debts has been judicially ascertained and other corporate property has been exhausted; (3) that a proceeding by the receiver of an insolvent bank to collect unpaid subscriptions to its capital stock is on behalf of creditors of the corporation and is a "case of claims" against the corporation within the meaning of the constitution; (4) that the statute quoted, in so far as it attempts to authorize actions to recover unpaid stock subscriptions before the corporate debts have been judicially ascertained and the corporate property exhausted, is in conflict with the constitution and void.

APPEAL from the district court of Douglas county. Heard below before KEYSOR, J.   *Reversed.*

*Joel W. West,* for appellant.

*Ralph W. Breckenridge, contra.*

IRVINE, C.

The attorney general, acting under authority of chapter 8 of the Compiled Statutes, entitled "Banks," applied, in the name of the state, for the appointment of a receiver of the German Savings Bank, a corporation conducting a banking business in Omaha.   A receiver was appointed, without objection by the defendant, to take possession of the books, records, assets, and property of said bank, together with all debts and evidence of debts due thereto, and empowered to collect all such debts, dues, and claims and reduce all assets as speedily as possible to money; to sell and dispose of all property belonging to the bank; to compound any and all bad or doubtful debts on such terms as should be thereafter ordered; and, in general, to do all acts essential and necessary to a speedy closing up and winding up the affairs of said bank.   On the 25th of November, 1896, the receiver made a report to the court of the assets, together with his estimate of their value, and he further reported that in his opinion such assets

were not sufficient to pay the liabilities of the bank within a reasonable time, whereupon the court entered an order, apparently *ex parte*, reciting that only $100,000 of the $500,000 subscribed capital stock had been paid in, and directing that an assessment be levied on the subscribers of eighty per cent of their respective subscriptions, and that the receiver institute actions against all stockholders in default of payment of said assessment to collect the amounts so assessed. On the 6th of January, 1897, the bank filed a motion to vacate the order because it was made without notice to the defendant, because it was made contrary to the provisions of section 4, article 11, of the constitution, entitled "Miscellaneous Corporations," and because it was prematurely and improvidently made. This motion was overruled and the bank appeals.

Two questions suggested in the briefs, but not much insisted upon in oral argument, relate to the right of the corporation to resist the order complained of and to the appealability of such order. The theory of the appellee seems to be that from the time the receiver is appointed the corporation as such is without standing in court to object to or resist such applications as the one in this case made. But we think this contention without merit. The action is against the corporation. It has for its object as a provisional and immediate remedy the appointment of a receiver to take charge of the assets of the corporation, to liquidate such assets and to apply them, all under the direction of the court, to the satisfaction of the corporate debts. If the assets prove more than sufficient to discharge the debts, the surplus, both by direction of the statute and by general principles of equity, is to be returned to the persons entitled thereto, to-wit, the officers of the corporation. The proceeding is not one merely *ex parte* whereby the court, as a sort of administrator, winds up the estate, but it is in its nature an adversary proceeding. The fact that the corporation consented or acquiesced in the appointment of the receiver and in the general directions given him by the first order, might properly

estop the bank from afterwards asserting that such order was improvidently made. But the corporation remains the defendant in the case. It has rights which it is entitled to protect. The corporation as such is interested in an economical and prudent management of its affairs, and, as the defendant in the case, and the only defendant, it has the right to be heard in subsequent proceedings. Its consent to the first order does not imply an entire abandonment of its corporate functions or estop it from resisting applications for further orders, at least when such further orders are not clearly for the purpose merely, of carrying out the order to which it did consent. While its property has been taken from its possession by the order appointing the receiver, the corporation is not by such order dissolved, and there remains in the corporation at least a contingent residuary interest in such property which makes it not only nominally but actually an interested party in the further proceedings, entitled to protect itself against improvident or unauthorized dealings with such property. The statute, by express terms, makes such orders appealable, section 275 of the Code of Civil Procedure providing that "All orders appointing receivers, giving them further directions and disposing of the property, may be appealed to the supreme court in the same manner as final orders and decrees." Nor can any objection to the appeal be urged on the ground that no exception was taken to the original order. That order having been made *ex parte* and a motion to vacate it having been made and an exception taken to the order overruling such motion, the right to appeal was preserved. (*Clarke v. Nebraska Nat. Bank*, 49 Neb., 800.)

We are thus brought to a consideration of the propriety of the order itself. The statute (Compiled Statutes, ch. 8, sec. 35) provides: "Whenever any receiver of any incorporated bank shall file a report with the court or judge thereof, setting forth the fact that in the opinion of such receiver, the assets of such bank are not sufficient to pay the liabilities of such bank within a reasonable time, the

court or judge may order such receiver to proceed at once to collect from the several stockholders of such bank, who are liable therefor, any or all such liabilities as shall be necessary for the payment of all the liabilities of such bank." This provision manifestly applies to the liabilities of stockholders as such, because the mere fact that a person otherwise indebted to a bank was a stockholder would not prevent the receiver under general authority conferred upon him in pursuance of the statute from enforcing such liability. The order was, therefore, strictly in conformity with the statute and made on the showing required by the statute to justify such order, and the precise question, therefore, presented is whether the statute, so far as we have quoted it, is a constitutional enactment. Article 11 of the constitution of 1875 deals with corporations. It is subdivided into three parts, one relating to railroad corporations, one to municipal corporations, the third to miscellaneous corporations. Section 4 of the last subdivision is as follows: "In all cases of claims against corporations and joint stock associations, the exact amount justly due shall be first ascertained, and after the corporate property shall have been exhausted the original subscribers thereof shall be individually liable to the extent of their unpaid subscriptions, and the liability for the unpaid subscription shall follow the stock." Another provision not essentially connected with this, but which is so similar in character that one should never be considered without reference to the other, is section 7 of the same subdivision, which reads as follows: "Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors over and above the amount of stock by him held to an amount equal to his respective stock or shares so held, for all its liabilities accruing while he remains such stockholder; and all banking corporations shall publish quarterly statements under oath of their assets and liabilities." It will be observed at once that the general effect of these two provisions is to establish a liability, free from inter-

ference by the legislature, on stockholders of all corpora-
tions, subject to certain conditions, for their unpaid sub-
scriptions; and in the case of banking corporations, an
additional liability for a further amount equal to the
amount of stock held by any person for the purpose of
paying debts incurred while such person is a stockholder.
The conditions attached to the enforcement of the first
liability are that its enforcement must be in cases of
claims against corporations; that the amount of such
claims shall be first ascertained, and that the corporate
property shall have been exhausted.

Does the banking act, in so far as it attempts to confer
authority upon the court to authorize the receiver of a
bank, merely upon a report that in his opinion the assets
of the bank are insufficient to pay its liabilities within a
reasonable time, to collect this unpaid subscription, con-
flict with section 4 as we have quoted it?   We have been
assisted in the examination of this question by very able
arguments and briefs advanced by counsel on either side.
Counsel agree that our constitutional provisions on the
subject are unique, and an examination of the briefs con-
vinces us that the cases in other states have not been di-
rected to a consideration of similar language, either in
constitutions or in statutes.   A large portion of the argu-
ment in support of the statute has been addressed to
three points: In the first place, a consideration of the
policy of the statute, which is manifestly to afford a
speedy and somewhat summary remedy for creditors of
insolvent banks, and to enable the receiver, for their
benefit, to promptly enforce all liabilities of stockholders.
Secondly, the justness of this policy, the danger attend-
ing upon any process requiring securities to be immedi-
ately sold, often on a falling market and at a sacrifice,
or, if that danger be avoided, the still greater danger of
delaying resort to proceedings against stockholders until
such a time that by their death or insolvency the reme-
dies become ineffectual.   Thirdly, an appeal to the gen-
eral principle that the corporation, while it was a going

concern, had the right to make calls for unpaid subscriptions regardless of the sufficiency of its assets to pay existing liabilities, and that this right passed to the receiver, so that the receiver, in collecting unpaid subscriptions, is acting merely as he does in collecting other assets.   We freely grant the correctness of the last statement as the statement of a general principle of law, and we further concede the correctness of the contention of the appellee as to the policy of the statute.   We may further, for the purposes of this case, acquiesce in the position of counsel that for the effective winding up of insolvent banks and the protection of depositors a remedy against stockholders should be permitted in some cases, before, by a slow process of liquidation, other assets shall have been exhausted.   But all these are matters not particularly pertinent to the question under consideration. We are not free to declare the law as we believe it ought to be.   In a doubtful case of construction it may be proper to throw the balance in favor of that side where we conceive the natural justice and policy to lie;  but this only for the reason that in such doubtful cases it is rather to be presumed that the intention of the lawmakers was on the side of manifest justice and policy. Where, after resort to established canons of construction, no doubt is left, we must construe the law as written, and not in accordance merely with our own notions of abstract or substantial justice.   Furthermore, in interpreting the written law the prevailing doctrine of other jurisdictions is of assistance only for the purpose of ascertaining upon what information the law-makers acted in adopting their language, and such general doctrine cannot be permitted to prevail as against a written constitution or statute plainly implying an intention to change the rule.   In order to a proper comprehension of the constitutional provisions, some regard must be paid to the state of the law at the time the constitution was adopted.   At that time a much-mooted question was whether, in case of insolvency, the liability for unpaid

subscriptions to stock rested solely on the original sub-
scriber, or whether it passed to his transferee, and, in the
latter case, whether the transferee's liability was sole or
whether the original subscriber also remained liable. We
conceive that one object of the adoption of section 4 al-
ready quoted was to remove this doubt, although the
decisions had not then advanced so far, perhaps, as to
enable a statement of the purpose to be made so clear
as to entirely effectuate that object.   There had also ap-
peared at that time the so-called American or trust-fund
theory with reference to corporate assets, especially capi-
tal stock.   The controversy on this point had not then
reached its present state of clear definition, but it had
advanced so far that the framers of the constitution evi-
dently intended, so far as their prescience extended, to
remove doubt on that subject.   Therefore, they provided
that a liability to creditors should exist, but only after
other assets should be exhausted and the amount of the
claims ascertained.   A motive undoubtedly prompting
this solution of the problem was the fact that this was a
new state, sparsely settled, its resources almost entirely
undeveloped, and with very little home capital, and still
less concentrated wealth in individuals, available for the
purpose of developing such resources.   It was, therefore,
the policy adopted to encourage the investment and, to a
certain extent, the concentration of capital for the pur-
pose of developing the resources of the state; and, in view
of the legal controversy then existing elsewhere, it can
hardly be doubted that it was deemed in consonance with
good policy to relieve persons engaging here in product-
ive enterprises, so far as practicable, from unnecessary
burdens and liabilities, and one method of doing so was
by requiring the exhaustion of the assets of a corporation
before calling upon subscribers for unpaid subscriptions
to the capital stock.   Whether this is now good policy,
whether this provision should still be retained, are ques-
tions foreign to the issue.   The constitution must be in-
terpreted according to the facts which its framers and

the people in adopting it had then in mind. Even without resort to these extraneous circumstances, the language of section 4, in its general scope, cannot be open to much doubt. With them in view, its meaning is absolutely clear. The general purpose is to require, prior to the enforcement of liability for the unpaid subscriptions, the ascertainment of the debts of the corporation, and also the exhaustion of the corporate property other than such unpaid subscriptions; that is, the constitution contemplates, as a general thing, a resort to such other property of a corporation in the first instance to pay its debts, and a resort to unpaid subscriptions only for the purpose of supplying the deficiency after a judicial ascertainment of the amount of such deficiency, and only to that extent. The necessity of a prior judicial ascertainment of the corporate debts has been frequently asserted by this court. (*Commercial Nat. Bank of Omaha v. Gibson*, 37 Neb., 750; *Globe Publishing Co. v. State Bank of Nebraska*, 41 Neb., 175; *Farmers Loan & Trust Co. v. Funk*, 49 Neb., 353.) The other requirement, that the corporate property must first be exhausted, is no less mandatory and is implied and, indeed, expressed in the cases referred to. It is true that the language of these cases implies that the ascertainment of the debts must be by way of judgment against the corporation, and that the exhaustion of the assets must be evidenced by a return of *nulla bona* on execution upon such judgment. Whence it is argued that when proceedings in insolvency are instituted and the assets of the corporation impounded by means of a receivership, that method becomes impracticable or useless, and that, therefore, a resort thereto not being available, the constitutional requirement does not apply to such a case as this. But the court was in those cases considering the distinction between proceeding as general creditors against stockholders and proceeding as judgment creditors against stockholders of a corporation whose property could not be reached by execution. When a receiver has been appointed for the express purpose of

winding up an insolvent corporation, of ascertaining its debts, of liquidating its assets and applying the same to the satisfaction of those debts, a different question is presented. The allowance through regular procedure of a claim by the receiver may in such case take the place of a judgment. His report disclosing an exhaustion of the assets may take the place of the return of execution *nulla bona*. These questions are not now presented to us. We merely suggest them for the purpose of showing that the language used in the cases cited in regard to the necessity of a judgment and execution, while perfectly proper in the connection then used, is not necessarily controlling in a proceeding of this character. We are entirely clear that the general purpose of the constitutional provision was as already indicated, and that it was the deliberate intention of the framers of the constitution to render the liability for unpaid stock subscriptions, in one sense at least, secondary, to be enforced only after a consummation of the conditions precedent mentioned, and it is no answer to this conclusion to assert that the corporation itself, while it was a going concern, might by call, if necessary, followed by suit, have enforced that liability as primary. The conditions are different. The corporation in making calls acts for the stockholders. Directors or other officers authorized to make the call are representatives of the stockholders, by them selected for that and other purposes, and the object in making the call is to provide the corporation with means of proceeding with the business for which it was created. When, however, the corporation suspends its functions as a going concern, the only purpose of resorting to the capital is to discharge debts. It was perfectly competent for the constitution to provide that upon this contingency a liability which might theretofore have been enforced unconditionally by the representatives of the corporation should thereafter be enforced only as a secondary liability and so far as necessary to accomplish its purpose. This the constitution did, and in such clear terms as to be almost unmistakable.

It remains, therefore, to be considered only whether the present case is one of "claims against corporations" within the meaning of the constitutional provision. On the one hand, it is argued that the constitution refers only to direct actions by creditors against the stockholders. On the other, that the present proceeding is one on behalf of all creditors and, therefore, within the terms of the constitution. We think the latter view is correct. The receivership in this case was based solely upon allegations that the capital of the bank had become impaired, that the bank was insolvent, that it was conducting its business in an unsafe manner, and was jeopardizing the interest of its depositors. There were no allegations justifying the interference of a court of equity, except for the sole purpose of protecting the creditors of the bank. By the appointment of the receiver, the bank's assets passed into his possession for the purpose of paying creditors. By the statute, after that single object is accomplished, the remainder of the assets must be returned to the proper officers and the functions of the receiver and of the court cease. The ordinary remedies of the creditors were suspended by this action. The receiver, as an officer of the court, became entitled to pursue all remedies and collect the assets which were before that within reach of the creditors. In *Farmers Loan & Trust Co. v. Funk, supra,* we held that the receiver might pursue the stockholders on their liability for the benefit of creditors. We do not doubt the correctness of that decision, and it is here reaffirmed. Indeed, the liability of the stockholders in case of insolvency existing only for the purpose of paying the corporate debts, it is solely for the benefit of creditors and to satisfy their claims that proceedings to enforce that liability could be brought. If the actions ordered by the district court are not cases of claims against the corporation, they do not lie at all, because it is only to pay claims against the corporation that the liability exists.

It is suggested that the statute relates only to the remedy and for that reason it is not in conflict with the

constitution which relates to the liability and not the remedy. But this argument is founded on a misconstruction of the constitution. The constitution, in fixing the liability at the amount of the unpaid subscriptions, is only declaratory of the common law and of the contract of the subscribers. The new feature was affixing terms and conditions upon which, and upon which only, the liability could be enforced, and it was beyond the power of the legislature to provide a remedy whereby such liability could be enforced in violation of the terms impressed by the constitution.

We conclude that the portion of the banking act under which the order complained of was made is in conflict with section 4 of article 11 of the constitution relating to miscellaneous corporations, and is void. The report of the receiver showing affirmatively that the corporate property had not been exhausted, but only that it was in his opinion probably insufficient within a reasonable time to pay the liabilities of the bank, the court had no authority at that time to direct actions to be brought for the unpaid subscriptions.

REVERSED AND ORDER DISCHARGED.