FRED E. BODIE, RECEIVER, APPELLANT, v. T. H. POLLOCK, APPELLEE.

FILED OCTOBER 20, 1923. No. 23299.

1. **Banks and Banking**: LIABILITY OF STOCKHOLDERS: CONSTITUTIONAL PROVISION. Sections 4 and 7, art. XII of the Constitution, are self-executing when considered together, as they have been and should be; and, so considered, they form a complete constitutional rule to the effect that, while stockholders in banks are subject to the double liability set out in said sections, such liability cannot be enforced until the property of the bank has been exhausted, and the amount justly due judicially determined.

2. ———: ———: ———: POWER OF LEGISLATURE. Since the time when the liability of a bank stockholder can be enforced is definitely fixed by the Constitution, no other time for the enforcement of that liability can be prescribed by the legislature so long as the Constitution stands unchanged.

APPEAL from the district court for Cass county: JAMES T. BEGLEY, JUDGE. *Affirmed.*

*Gaines, Van Orsdel & Gaines,* for appellant.

*Crossman, Munger & Barton,* contra.

Heard before MORRISSEY, C. J., LETTON, DEAN, DAY and GOOD, JJ., REDICK and SHEPHERD, District Judges.

PER CURIAM.

Plaintiff was receiver of the Bank of Cass County, which was insolvent. Before the assets of the bank were exhausted and without any judicial determination that said assets were insufficient to pay the creditors, he brought an action against the defendant Pollock, a stockholder, for a sum equal to the face value of the latter's stock, alleging in his petition that it was necessary to enforce the double liability of the stockholders in order to pay out. The defendant demurred to the petition upon the ground that it did not state facts sufficient to constitute a cause of action, and because it showed on

its face that the action was prematurely brought. The demurrer was sustained and plaintiff brings the case here for review.

It is conceded in the briefs and upon argument that the petition was sufficient except that it was not alleged therein that the bank assets had been exhausted and that the proper judicial determination as to the amount due had been made. The question is, therefore, may a receiver bring his action against the stockholders when the bank is adjudged insolvent, as the appellant receiver contends, or must he wait until the assets are exhausted and a judicial determination has been made of the exact amount justly due, as the trial court found?

The law of double liability is found in section 7, art. XII of the Constitution, and is as follows:

"Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors over and above the amount of stock by him held to an amount equal to his respective stock or shares so held, for all its liabilities accruing while he remains such stockholder."

It is the contention of the appellant that this provision is not self-executing and must be construed in connection with the legislative enactment of 1919 to give it effect. The following is the legislative enactment in question, found in section 8015, Comp. St. 1922:

"Every stockholder in a banking corporation shall be individually liable to its creditors, over and above the amount of stock by him held, to an amount equal to his respective stock or shares so held, for all its liabilities accruing while he remains such stockholder. In case any stockholder shall sell, transfer or dispose of such stock, knowing that such bank is insolvent, he shall be deemed the owner of such stock, and liable thereon the same as if such stock had not been sold, transferred or disposed of; and such liability may be enforced whenever such banking corporation shall be adjudged insolvent without regard to the probability of the assets of such

insolvent bank being sufficient to pay all of its liabilities."

But, though the doctrine so contended for—that the constitutional provision is not self-executing—is supported in a way by much respectable authority, this court has held to the contrary. In a case involving the liability of a stockholder in a banking corporation, it was expressly declared that the provisions of said section 7 of the Constitution are enforceable without supplementary statutory enactments. *Farmers Loan & Trust Co. v. Funk,* 49 Neb. 353. It is true that the provision standing alone may lack the completeness necessary to make it self-operating. This is the point upon which a number of courts have held somewhat similar constitutional provisions inoperative of themselves. But construing the section with another section of the Constitution, section 4 of the same article, any lack of this kind is supplied and the section becomes of itself fully operative in so far as to provide for the enforcement of the double liability referred to therein. The language of said section 4 is:

"In all cases of claims against corporations and joint stock associations, the exact amount justly due shall be first ascertained, and after the corporate property shall have been exhausted the original subscribers thereof shall be individually liable to the extent of their unpaid subscription, and the liability for the unpaid subscription shall follow the stock."

By this it will be seen that the time and conditions of the enforcement of the liability are made sufficiently definite.

Prior to 1897 the legislature passed a law (Laws 1895, ch. 8, sec. 35) expressly providing that, whenever any bank receiver should report to the court that in his opinion the assets of the bank would not be sufficient to pay out within a reasonable time, the court might direct him to at once collect from the stockholders. Proceeding under this statute, the receiver of the German

Savings Bank made such a report to the court and prayed the court for an order permitting and directing him to sue the stockholders on their double liability. The stockholders, or one of them, intervened and opposed the application. Their objections were overruled, and the order made. This order was reviewed upon the merits in this court in the case of *State v. German Savings Bank,* 50 Neb. 734, and the doctrine announced by the court in that case has become the settled law of the state through a long course of years and by a line of cases in which said doctrine has been consistently upheld. The case referred to was considered with unusual care because of the legislative enactment referred to, which, it will be observed, is similar in language and purpose to the enactment of 1919 hereinbefore quoted. In other words, the legislature in that case, as in this, had attempted to supplement the Constitution by providing that the stockholders might be sued before the assets were exhausted. The opinion in that case completely answers the contention of the appellant receiver in this. And the reasons for sustaining the objections of the stockholders in that case apply with equal force to sustaining the decision of the district court in this. It was there again announced that the two constitutional provisions, sections 4 and 7, art. XII, were to be construed together, and that, so construed, they were completely self-operating and self-executing, to the effect that the double liability existed, but that it could not be enforced until the assets were exhausted and until the court judicially determined the exact amount to be recovered. It was there declared that no matter of expediency or of policy ought to be permitted to avoid or to change the express provision and direction of the fundamental law, and that the legislature could not be permitted to provide by legislative enactment a different or a better rule for enforcing the liability against the stockholder, even if experience seemed to show that it would be beneficial. To be sure, the Constitution

could be changed, but in this connection what the recent constitutional convention did affords only an additional reason why the rule so long ago announced and so uniformly adhered to should now stand. Not only did the late constitutional convention not change the constitutional provisions in question, but it reenacted them. These constitutional provisions had received a construction which had become the settled law of the state and that construction had been read into and become a part of the said provisions. It is well settled in many, if not most, of the jurisdictions of the country that, where a construction of constitutional provisions has been adopted and a constitutional convention thereafter reenacts such provisions, it reenacts not only the language of the provisions but the construction which has attached to the same.

. Probably no better exposition and declaration of the law with respect to the question now before the court can be found than appears in the opinion written in the case of the *State v. German Savings Bank, supra.* In the interest of clear and comprehensive statement excerpts from that opinion are here quoted:

"It will be observed at once that the general effect of these two provisions is to establish a liability, free from interference by the legislature, on stockholders of all corporations, subject to certain conditions, for their unpaid subscriptions; and in the case of banking corporations, an additional liability for a further amount equal to the amount of stock held by any person for the purpose of paying debts incurred while such person is a stockholder. The conditions attached to the enforcement of the first liability are that its enforcement must be in cases of claims against corporations; that the amount of such claims shall be first ascertained, and that the corporate property shall have been exhausted.

"Does the banking act, in so far as it attempts to confer authority upon the court to authorize the receiver of a bank, merely upon a report that in his opinion

the assets of the bank are insufficient to pay its lia-
bilities within a reasonable time, to collect this unpaid
subscription, conflict with section 4 as we have quoted
it?   *   *   *   A large portion of the argument in sup-
port of the statute has been addressed to three points:
In the first place, a consideration of the policy of the
statute, which is manifestly to afford a speedy and some-
what summary remedy for creditors of insolvent banks,
and to enable the receiver, for their benefit, to promptly
enforce all liabilities of stockholders.   Secondly, the just-
ness of this policy, the danger attending upon any process
requiring securities to be immediately sold, often on a
falling market and at a sacrifice, or, if that danger be
avoided, the still greater danger of delaying resort to
proceedings against stockholders until such a time that
by their death or insolvency the remedies become in-
effectual.   Thirdly, an appeal to the general principle
that the corporation, while it was a going concern, had
the right to make calls for unpaid subscriptions regard-
less of the sufficiency of  its assets to pay existing lia-
bilities, and that this right passed to the receiver, so
that the receiver, in collecting unpaid subscriptions, is
acting merely as he does in collecting other assets,  We
freely grant the correctness of the last statement as
the statement of a general principle of law, and we
further concede the correctness of the contention of the
appellee as to the policy of the statute.   We may further,
for the purposes of this case, acquiesce in the position
of counsel that for the effective winding up of insolvent
banks and the protection of depositors a remedy against
stockholders should be permitted in some cases, before,
by a slow process of liquidation, other assets shall have
been exhausted.   But all these are matters not partic-
ularly pertinent to the question under consideration.
We are not free to declare the law as we believe it
ought to be.   In a doubtful case of construction it may
be proper to throw the balance in favor of that side
where we conceive the natural justice and policy to

lie; but this only for the reason that in such doubtful
cases it is rather to be presumed that the intention of
the lawmakers was on the side of manifest justice and
policy. Where, after resort to established canons of con-
struction, no doubt is left, we must construe the law
as written, and not in accordance merely with our own
notions of abstract or substantial justice. Furthermore,
in interpreting the written law the prevailing doctrine
of other jurisdictions is of assistance only for the pur-
pose of ascertaining upon what information the law-
makers acted in adopting their language, and such
general doctrine cannot be permitted to prevail as against
a written Constitution or statute plainly implying an
intention to change the rule. * * * The Constitu-
tion must be interpreted according to the facts which
its framers and the people in adopting it had then in
mind. * * * We are entirely clear that the general
purpose of the constitutional provision was as already
indicated, and that it was the deliberate intention of
the framers of the Constitution to render the liability
for unpaid stock subscriptions, in one sense at least,
secondary, to be enforced only after a consummation of
the conditions precedent mentioned, and it is no answer
to this conclusion to assert that the corporation itself,
while it was a going concern, might by call, if neces-
sary, followed by suit, have enforced that liability as
primary. The conditions are different. The corpora-
tion in making calls acts for the stockholders. Directors
or other officers authorized to make the call are repre-
sentatives of the stockholders, by them selected for that
and other purposes, and the object in making the call
is to provide the corporation with means of proceeding
with the business for which it was created. When, how-
ever, the corporation suspends its functions as a going
concern, the only purpose of resorting to the capital is
to discharge debts. It was perfectly competent for the
Constitution to provide that upon this contingency a
liability which might theretofore have been enforced

unconditionally by the representatives of the corpora-
tion should thereafter be enforced only as a secondary
liability and so far as necessary to accomplish its pur-
pose. This the Constitution did, and in such clear terms
as to be almost unmistakable. * * * The new feature
was affixing terms and conditions upon which, and upon
which only, the liability could be enforced, and it was
beyond the power of the legislature to provide a remedy
whereby such liability could be enforced in violation of
the terms impressed by the Constitution.

"We conclude that the portion of the banking act
under which the order complained of was made is in
conflict with section 4 of article XII of the Constitution
relating to miscellaneous corporations, and is void. The
report of the receiver showing affirmatively that the
corporate property had not been exhausted, but only
that it was in his opinion probably insufficient within
a reasonable time to pay the liabilities of the bank, the
court had no authority at that time to direct actions to
be brought for the unpaid subscriptions."

Following this decision are *Hastings v. Barnd,* 55 Neb.
93; *State v. German Savings Bank,* 65 Neb. 416; *Hamil-
ton Nat. Bank v. American Loan & Trust Co.,* 66 Neb. 67;
*Holcomb v. Tierney,* 79 Neb. 660. Nor does the holding so
announced lack approval in federal jurisdictions. In *Goss
v. Carter,* 156 Fed. 746, the circuit court of appeals for
the fifth district declare that the provisions in question
are self-executing, and state in substance that by the
mandate of the Nebraska Constitution the liability of
bank stockholders cannot be imposed till the indebted-
ness of the corporation is judicially ascertained and the
assets of the corporation exhausted.

The law being as it is, the ruling of the district judge
was right, and should stand. For, "while a practical
interpretation of the Constitution by the legislature will
not be lightly disregarded in doubtful cases, yet, when
the language of the Constitution is free from ambiguity,
an interpretation thereof by the legislative department

cannot be invoked to nullify the fundamental law." *State v. Cornell,* 60 Neb. 276.

AFFIRMED.