STATE OF NEBRASKA EX REL. PAUL L. DOUGLAS,
ATTORNEY GENERAL OF THE STATE OF NEBRASKA,
APPELLEE, V. ALLEN J. BEERMANN, SECRETARY OF
STATE OF THE STATE OF NEBRASKA, ET AL., APPELLANTS.

347 N.W.2d 297

Filed March 30, 1984. No. 83-091.

Walter H. Radcliffe, for appellants.

Paul L. Douglas, Attorney General, and Patrick T. O'Brien, for appellee.

Herbert M. Fitle, Omaha City Attorney, and Timothy K. Kenny, for amicus curiae City of Omaha.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.
The district court declared Neb. Rev. Stat. §§ 50-201 and 50-202 (Cum Supp. 1982) to be in contravention of article II, § 1, and article III, § 7, of the Nebraska Constitution. This appeal followed. For the reasons hereinafter stated we reverse and remand for judgment consistent with this opinion.

In the 1981 session of the Legislature, L.B. 206 was passed over the veto of then Governor Charles Thone and is codified at Neb. Rev. Stat. §§ 50-201 and

50-202 (Cum. Supp. 1982). These statutes provide: "The Legislature hereby finds and declares (1) that the Constitution of Nebraska, by expressly providing for the legislative branch of government, implies the powers and the duty to provide the means, accessories, and instrumentalities to carry into effect the purposes for which the Legislature was created, (2) that items in the nature of expenses incidental to holding the office are not pay or perquisites within the meaning of Article III, section 7 of the Constitution of Nebraska, and (3) that the Constitution is construed to allow expenses to members of the Legislature, incidental to the performance of their duties as members of the Legislature, without contravening any constitutional provision as to pay, perquisites, or compensation." § 50-201.

"Each member of the Legislature shall be allowed necessary expenses incurred while performing in the official capacity as a member of the Legislature." § 50-202.

The facts have been stipulated. On November 4, 1981, State Senator Ernie Chambers of the 11th Legislative District in Omaha filed a $29.40 claim with the Director of Administrative Services for mileage reimbursement for one round trip between Omaha and Lincoln in connection with his attendance at the first special session of the Eighty-seventh Legislature. This claim was honored and paid.

On November 6, 1981, Senator Chambers filed a claim for $250 to reimburse him for $147 in mileage, for five round trips between Omaha and Lincoln, and $103 in meals. These expenses were incurred also in connection with Senator Chambers' attendance at the 1981 special session. On December 30, 1981, Senator Chambers submitted a claim for $117.60 for four Omaha-to-Lincoln round trips, also for the 1981 special session. Senator Chambers has also filed claims for $50 per day, which includes mileage and meals, for the 1981 90-day regular session of the Legislature and the 1982 60-day regular

session. None of these claims have apparently been honored or paid by the Director of Administrative Services.

A petition, naming the Secretary of State and Director of Administrative Services as defendants, was filed by the Attorney General in the district court for Lancaster County, seeking a declaration that §§ 50-201 and 50-202 are in violation of article III, § 7, of the Nebraska Constitution, which provides in relevant part: "Each member of the Legislature shall receive a salary of not to exceed four hundred dollars per month during the term of his office. In addition to his salary, each member shall receive an amount equal to his actual expenses in traveling by the most usual route once to and returning from each regular or special session of the Legislature. Members of the Legislature shall receive no pay nor perquisites other than said salary and expenses, and employees of the Legislature shall receive no compensation other than their salary or per diem."

The district court found § 50-202 to be in conflict with the above-quoted constitutional provision, and § 50-201 an inordinate legislative exercise of judicial power in violation of the constitutionally mandated separation of legislative, executive, and judicial powers found in article II, § 1, of the Nebraska Constitution. It further found that Senator Chambers was entitled to reimbursement of his mileage expenses incurred for one round trip between Omaha and Lincoln for each of the three legislative sessions and that meal expenses were not constitutionally allowed.

We disagree with the district court's interpretation of those constitutional provisions.

We first address the issue of whether § 50-201 violates article II, § 1, of the Nebraska Constitution. Section 50-201 is, in essence, a statement by the Legislature that it has assessed the Nebraska Constitution and concluded that § 50-202 is a constitutional exercise of its power. Assessing the limits of consti-

tutionally permitted conduct is an activity commonly engaged in by many persons or entities other than the judges and courts of this state. Ideally, whenever a police officer, without obtaining a warrant, makes an arrest or conducts a search, that officer has determined the activity is constitutionally permissible. In a similar manner, when the Legislature enacts a law, it has determined that the enactment abides with the Constitutions creating the state and federal governments. While it appears that, in the usual case, a law created by the Legislature is not accompanied by a specific finding that the law is a constitutional exercise of its power, we see no reason to treat the Legislature's expression of its assessment of the limits of its constitutional power as an encroachment upon the powers granted to the judiciary. Section 50-201 in no way encroaches upon the powers commonly exercised by the courts of this state to interpret and enforce their interpretations of the state Constitution. It in no way infringes upon the power of this court, with the concurrence of five of its judges, to declare this act of the Legislature unconstitutional, if such it were. The finding by the district court that the enactment of § 50-201 is a violation of the separation of powers required by article II, § 1, of the Nebraska Constitution is erroneous.

In turning our attention to the question of whether § 50-202 violates article III, § 7, of the Nebraska Constitution, it is well to remind ourselves that constitutional provisions are not open to construction as a matter of course. *Gaffney v. State Department of Education*, 192 Neb. 358, 220 N.W.2d 550 (1974). Before rules of construction become available in regard to a constitutional provision, it must be demonstrated that the meaning of the provision is not clear and that the intent of the people in adopting the provision can be determined only by construction. *State ex rel. School Dist. of Scottsbluff v. Ellis*, 168 Neb. 166, 95 N.W.2d 538 (1959). The words and

terms of a constitutional provision are to be interpreted and understood in their most natural and obvious meaning, unless the subject indicates or the text suggests that they have been used in a technical sense. *State ex rel. Caldwell v. Peterson*, 153 Neb. 402, 45 N.W.2d 122 (1950).

The first two sentences of the relevent portion of article III, § 7, address themselves only to what members of the Legislature shall mandatorily receive. The first sentence requires that each member of the Legislature receive a salary. The second sentence requires that, in addition to salary, the member receive "an amount equal to his actual expenses in traveling by the most usual route once to and returning from each regular or special session . . . ." We encounter no limiting language until we reach the third sentence, which in relevent part reads: "Members of the Legislature shall receive no pay nor perquisites other than said salary and expenses . . . ." At this point the question becomes whether the adjective "said" preceding the words "salary and expenses" modifies only the word "salary" or modifies both the word "salary" and the word "expenses." Stating the question another way, Is it the direction of the third sentence that the members of the Legislature receive nothing other than the "salary" and "actual expenses" mandated by the first and second sentences, respectively; or is it that solons shall receive no "pay nor perquisites" other than the mandated "salary," but may receive other "expenses" in addition to the mandated "actual expenses"?

Webster's Third New International Dictionary, Unabridged (1968), tells us that "pay," as a noun, in an archaic sense, means "something given in return by way of reward or retaliation"; that it is wages, salary, or remuneration. Black's Law Dictionary 1016 (5th ed. 1979) defines the noun "pay" as meaning compensation, wages, salary, commissions, or fees. *In re Appeal of Wilkins*, 116 Neb. 748, 219

N.W. 9 (1928), presents an illustration of impermissible "pay." Therein, a legislator, who was a professional accountant, billed the state for accounting services rendered in the course of a legislative investigation. It was held that article III, § 7, limited a legislator's compensation to the amount of the salary or per diem then specified in the Constitution; therefore, he could not receive a fee for the professional services he rendered.

"Perquisite" is defined in Webster's Third New International Dictionary, Unabridged (1968), as casual income or profits; a privilege, gain, or profit incidental to an employment in addition to regular salary or wages; a gratuity or tip; something held or claimed as an exclusive right or possession. Black's Law Dictionary 1027 (5th ed. 1979) defines the word as meaning emoluments, fringe benefits, or other incidental profits or benefits attaching to an office or position. We have previously, in State v. Sheldon, 78 Neb. 552, 111 N.W. 372 (1907), defined perquisite as a gain or profit incidentally made from employment in addition to regular salary or wages. In that case we held that a residence provided by the state for occupancy by the Governor, at the place he was required by law to live, was not a "perquisite" within the meaning of a constitutional provision that the Governor might not receive any "perquisites of office or other compensation" in addition to his salary. We concluded that perquisite meant a compensation or reward for the performance of an official duty. See, also, Louisiana State C. S. Com'n v. Louisiana Dept. of Cor., 251 So. 2d 524 (La. App. 1971); Co. Aud. McKean Co. v. Anderson, 133 Pa. Super. 475, 3 A.2d 28 (1938); Christopherson v. Reeves, 44 S.D. 634, 184 N.W. 1015 (1921); Harris County v. Hammond, 203 S.W. 445 (Tex. Civ. App. 1918).

Therefore, the first 14 words of the third sentence of the constitutional provision in question, "Members of the Legislature shall receive no pay nor perquisites other than said salary," given their

most natural and obvious meaning, say that Nebraska's legislators shall receive no wages, remuneration, compensation, fees, profit, or gain incidental to their office other than the salary mandated in the first sentence of the section.

We now address the meaning of the next two words, "and expenses."

In *Bartling v. Wait*, 96 Neb. 532, 148 N.W. 507 (1914), we had occasion to determine that the cost of erecting a building was not an "expense" within the meaning of the constitutional phrase "making appropriations for the expenses of state government, and state institutions." *In re Appeal of Wilkins, supra,* does not help resolve the question, for, although this court permitted payment of the expenses, no real issue was presented concerning the propriety of doing so. The posture of the law in this jurisdiction at this point is that while one case has declared what is not an expense, no definition exists of what is an expense. We must now adopt such a definition.

An "expense" is something expended in order to secure a profit or bring about a result. Expenses are the charges incurred by an employee in connection with the performance of his duties, and typically include transportation, meals, and lodging while traveling. Expenses are the money given to an employee as reimbursement for such charges. Webster's Third New International Dictionary, Unabridged (1968). Black's Law Dictionary 518 (5th ed. 1979) defines an expense as that which is "expended, laid out or consumed. An outlay; charge; cost; price." It has been held that the words "salary" and "expense," as used in relation to the compensation of municipal officers, are separate and distinct terms which connote entirely different concepts; "salary" is a fixed periodical compensation paid for services rendered, whereas an "expense" is a charge incurred in performing those services. *Geyso v. Cudahy*, 34 Wis. 2d 476, 149 N.W.2d 611 (1967).

The word "expenses" is not modified in the third sentence by the adjective "said"; that adjective modifies only the word "salary." Consequently, the "salary" mentioned in the third sentence can only be the "salary" named in the first sentence. Such, however, is not the case with the term "expenses" in the second and third sentences. Neither is "expenses" in the third sentence modified by the word "actual," as it is in the second sentence. We conclude, therefore, that the "expenses" in the third sentence are something different than the "actual expenses" mentioned in the second sentence. These other expenses are the charges incurred by a legislator in connection with the performance of his or her duties as a member of the Legislature.

The meaning of the third sentence, interpreting the terms and words used in their natural and obvious senses, is: Members of the Legislature shall receive no wages, remuneration, compensation, fees, profit, or gain other than the salary mandated in the first sentence above and reimbursement for expenses incurred in connection with the performance of their duties.

The effect of the relevant portion of article III, § 7, is that legislators must receive their salary and actual expenses in traveling by the most usual route once to and returning from each regular or special session. They may, in addition, receive reimbursement for other expenses incurred in connection with the performance of their duties as authorized by the Legislature through the appropriation of funds. The enactment of L.B. 206 does no more than implement the constitutionally permitted reimbursement of the aforesaid expenses.

There exists a variety of cases from a number of our sister states on the general question of the circumstances under which expenses are payable to state officers. As might be expected, these cases are not uniform in their analyses, holdings, or rationales. See, e.g., *Spearman v. Williams*, 415 P.2d

597 (Okla. 1966); *Van Hart v. deGraffenried*, 388 So. 2d 1196 (Ala. 1980); and *Opinion of the Justices*, 152 Me. 302, 140 A.2d 762 (1957), holding expenses payable. On the other hand, see, *Gipson v. Maner, Judge*, 225 Ark. 976, 287 S.W.2d 467 (1956), and *State ex rel. O'Connell v. Yelle*, 51 Wash. 2d 594, 320 P.2d 1079 (1958), holding otherwise. Because each of the Constitutions of the sovereign states of our nation use relatively unique combinations of language, none of these cases are particularly helpful. Nonetheless, we find the reasoning of *State ex. rel. Payne v. Reeves*, 44 S.D. 568, 184 N.W. 993 (1921), sound. It holds that a lump sum advance to judges moving to the state capital, where they were not required to live, was merely the payment of expenses incident to the discharge of their duties and did not violate a constitutional provision which fixed their salary and made it unlawful for them to receive any "compensation, perquisite or emoluments" except for such salary. See, also, *McCoy v. Handlin, State Auditor*, 35 S.D. 487, 153 N.W. 361 (1915).

Even if we were to assume arguendo that the constitutional section in question is ambiguous, and for that reason subject to construction, the same result would obtain.

Each of the parties hereto urges upon us a rule of constitutional construction supporting his interpretation of the subject language.

On the one hand, the Attorney General contends that executive construction of a constitutional provision, long acquiesced in by the Legislature, is entitled to substantial weight in determining the meaning of the provision. In support of that contention the Attorney General introduced into evidence a copy of a 1937 opinion letter issued in response to an inquiry from the Auditor of Public Accounts concerning the constitutionality of compensating members of the Legislative Council for their actual expenses incurred in the performance of their duties as members of the council. The Legislative Council,

established in 1937, consists of members of the Legislature and is charged with the consideration of legislative policies between sessions of the Legislature. Neb. Rev. Stat. § 50-401 (Reissue 1978). The then Attorney General opined that it was constitutionally permissible to reimburse legislators for their actual expenses incurred while attending to council business if the expenses were incurred while the Legislature was not in session. The opinion also concluded that the compensation for expenses incurred by a council member while the Legislature was in session was not permitted by article III, § 7. The Attorney General contends that the Legislature's acquiescence to that interpretation, at least until the passage of L.B. 206 in 1981, and to others consistent with the 1937 opinion, see, Op. No. 60, Report of the Attorney General of the State of Nebraska 102 (1959-1960); Op. No. 164, Report of the Attorney General of the State of Nebraska 250, and Op. No. 178, Report of the Attorney General of the State of Nebraska 272 (1977-1978); Att'y Gen. Op. No. 17 (Feb. 3, 1981); Att'y Gen. Op. No. 50 (Mar. 13, 1981); and Att'y Gen. Op. No. 141 (Sept. 22, 1981), should be determinative of the meaning of article III, § 7. *State ex rel. State Railway Commission v. Ramsey*, 151 Neb. 333, 37 N.W.2d 502 (1949); 16 C.J.S. *Constitutional Law* § 33 (1956). The constitutional support for an opinion that legislators may be reimbursed expenses while performing legislative duties when the Legislature is not in session but may not be reimbursed expenses while the Legislature is in session is not apparent to us.

On the other hand, the Secretary of State directs us to another tenet of constitutional construction which holds that a presumption of constitutionality attaches to legislative enactments and that a reasonable legislative interpretation of a constitutional provision which has a doubtful meaning should be adopted by this court. *Otto v. Hahn*, 209 Neb. 114, 306 N.W.2d 587 (1981); *American Fed. of S., C. & M.*

*Emp. v. Dept. of Public Institutions*, 195 Neb. 253, 237 N.W.2d 841 (1976).

The collision of these two principles of constitutional construction destroys their utility in lending us guidance in finding the meaning of article III, § 7. As such, we find neither helpful in this inquiry.

The touchstone in determining the meaning of ambiguous constitutional language is to discover and give effect to the intent of the framers of the Constitution and the people in adopting it. *State ex rel. Western Technical Com. Col. Area v. Tallon*, 196 Neb. 603, 244 N.W.2d 183 (1976); *State ex rel. Meyer v. County of Lancaster*, 173 Neb. 195, 113 N.W.2d 63 (1962); *Ramsey v. County of Gage*, 153 Neb. 24, 43 N.W.2d 593 (1950).

The Nebraska Constitution has had a salary and expense provision since 1867. The Nebraska Constitutional Convention of 1919-1920 proposed, and the people adopted, the following salary and expense amendment: "Senators and representatives . . . shall each receive the sum of eight hundred dollars for attendance at each regular biennial session of the Legislature and ten dollars for each day in actual attendance at special sessions; but in no case shall compensation for attendance at any one special session exceed one hundred dollars. They shall also be paid ten cents per mile for each mile traveled in once going to and returning from each regular or special session of the Legislature by the most usual route. Members of the Legislature shall receive no pay nor perquisites other than their mileage and salary or per diem, as the case may be, nor shall employees receive any other compensation than their salary or per diem." Neb. Const. art. III, § 7 (Comp. Stat. 1922).

In 1934 the people, by initiative petition, proposed, and by election adopted, the constitutional amendment providing for a unicameral instead of the former bicameral system of Legislature. The salary and expense provision of that amendment pro-

vided: "The aggregate salaries of all the members shall be $37,500 per annum, divided equally among the members and payable in such manner and at such times as shall be provided by law. In addition to his salary, each member shall receive an amount equal to his actual expenses in traveling by the most usual route once to and returning from each regular or special session of the Legislature. Members of the Legislature shall receive no pay nor perquisites other than said salary and expenses, and employees of the Legislature shall receive no compensation other than their salary or per diem." Neb. Const. art. III, § 7 (Comp. Stat. Supp. 1935).

While the salary provision of article III, § 7, has been frequently amended since 1934 to increase a legislator's salary, the expense provision we are now considering remains as adopted in 1934.

The Attorney General urges us to consider statements by the members of the constitutional convention of 1919-1920 in order to determine the meaning of the 1934 amendment. In that convention statements were made to the effect that the salary paid legislators was to reimburse them for the expenses of holding office. See 1 Journal of the Nebraska Constitutional Convention 1049-61 (1919-1920). As we have previously noted, the salary and expense provisions adopted by the 1919-1920 convention are different than those proposed by the initiative petition and adopted by the people in 1934. In *Bodie v. Pollock*, 110 Neb. 844, 195 N.W. 457 (1923), we were called upon to determine whether then § 7 of article XII, which provided that stockholders of banking corporations be personally liable to the bank's creditors, and § 4 of article XII, which provided that personal liability of stockholders would arise after the exhaustion of corporate assets, were in conflict with an enactment of the Legislature. In that case this court was asked not to follow previous opinions which were decisive of the issue, on the theory that the constitutional changes adopted by the people

after the 1919-1920 constitutional convention changed the law. In that connection we stated: "Not only did the late constitutional convention not change the constitutional provisions in question, but it reenacted them. These constitutional provisions had received a construction which had become the settled law of the state and that construction had been read into and become a part of the said provisions. It is well settled in many, if not most, of the jurisdictions of the country that, where a construction of constitutional provisions has been adopted and a constitutional convention thereafter reenacts such provisions, it reenacts not only the language of the provisions but the construction which has attached to the same." *Id.* at 848, 195 N.W. at 458.

The foregoing language is clearly inapposite to this case. The language of the constitutional provision concerning legislative salaries and expenses was changed in 1934; and while the 1919-1920 convention proceedings make interesting reading, they are not relevant in interpreting a different provision adopted by the people 14 years later, after being placed on the ballot by initiative petition.

Lastly, the rejection by the electorate of certain constitutional amendments is pointed to as establishing the intent of the people in adopting the 1934 language. Those amendments would variously have changed the salary provision, allowed per diem payments, and specifically allowed for the reimbursement of expenses incurred while in session. 1971 Neb. Laws, L.B. 889; 1972 Neb. Laws, L.B. 311; 1982 Neb. Laws, L.B. 531. Although some of that history is cited to us, we are not told how language rejected in 1972 and 1982 helps us determine what the voters intended in 1934. Those rejections tell us what voters were not willing to adopt in those later years, but can no more tell us what was meant in 1934 than they can tell us what the electorate might do in the years 2010 or 2020.

The Attorney General argues, however, that at the

least the rejected proposals tell us how the Legislature itself interpreted the language in question. In part, this observation has been dealt with earlier. In addition, it is noted the fact that the Legislature, faced with the 1937 opinion of the then Attorney General, and perhaps out of an excess of caution, sought a change in the constitutional language does not bear upon the intention of those who had earlier adopted the language.

In summary, there is no showing of the relevant history concerning the intention of those adopting the language proposed by the 1934 initiative petition with respect to the issue at hand. In such a circumstance we can only revert to a study of the language itself. Such a study has been made, with the result detailed earlier in this opinion.

We note that the petition, in addition to seeking a declaration of unconstitutionality, prays for "such other further or different relief as shall be just and equitable." Assuming, but not deciding, the propriety of equitable relief in the context of this case, the record is such that a determination of whether the expenses claimed by Senator Chambers are "necessary expenses incurred while performing in the official capacity as a member of the Legislature," as contemplated by § 50-202, cannot be made.

In addition, the parties have not addressed the issue of the compensability of expenses incurred during, and claimed for, the 1981 regular legislative session, which was adjourned prior to August 30, 1981, the effective date of L.B. 206. We therefore offer no opinion with respect thereto.

REVERSED AND REMANDED.