EDWARD A. JAKSHA, APPELLANT, v. DEB THOMAS, DIRECTOR OF THE DEPARTMENT OF ADMINISTRATIVE SERVICES, ET AL., APPELLEES.

502 N.W.2d 827

Filed July 16, 1993.    No. S-91-459.

John M. Peebles, of Domina & Copple, P.C., for appellant.

Don Stenberg, Attorney General, and L. Jay Bartel for appellees.

Charles M. Pallesen, Jr., and Alan E. Peterson, of Cline, Williams, Wright, Johnson & Oldfather, for amicus curiae Executive Board, 92d Legislature, State of Nebraska.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

LANPHIER, J.

This is an action for declaratory judgment by plaintiff-appellant, Edward A. Jaksha, challenging the constitutionality of a statute providing for the reimbursement of certain expenses incurred by the members of the Nebraska Legislature. Plaintiff appeals the district court for Lancaster County's dismissal of plaintiff's second amended petition.

## FACTS

Plaintiff is a citizen, resident, and taxpayer of the State of Nebraska. Plaintiff instituted this action against then acting director of the Department of Administrative Services for the State of Nebraska, Deb Thomas; then acting State Treasurer for the State of Nebraska, Frank Marsh; and the Department of Administrative Services. At the time of trial, Thomas had been succeeded by John Rochford. Plaintiff claims that article III, § 7, of the Nebraska Constitution limits the reimbursement of expenses incurred by members of the Legislature to actual expenses incurred in traveling one time to and from each regular or special session of the Legislature. Article III, § 7, as amended in 1988, provides in part:

> Each member of the Legislature shall receive a salary of not to exceed one thousand dollars per month during the term of his or her office. In addition to his or her salary, each member shall receive an amount equal to his or her actual expenses in traveling by the most usual route once to and returning from each regular or special session of the Legislature. Members of the Legislature shall receive no pay nor perquisites other than his or her salary and expenses, and employees of the Legislature shall receive no compensation other than their salary or per diem.

Neb. Rev. Stat. § 50-202 (Reissue 1988) permits reimbursement of expenses incurred by the legislators in the

performance of their duties as members of the Legislature. The Executive Board of the Legislative Council is responsible for defining the expenses which are reimbursable to the individual state senators. On August 11, 1988, the board adopted a "Sessional Expense Reimbursement Policy" for members of the Legislature. The policy permits legislators to receive reimbursement for expenses actually paid or incurred in the performance of their duties as members of the Legislature. The policy provides a cap on the amount of reimbursement. The policy operates in the following manner:

a) For those senators who reside more than fifty (50) miles from the State Capitol, the Legislature provides reimbursement to the members of an amount equal to the federal reimbursement rate (which currently is $66.00) times the number of legislative days in a regular or special session. In addition, a member receives mileage reimbursement for one round trip per week from the senator's home to the State Capitol at the statutory state mileage reimbursement rate. Members who live beyond the fifty (50) mile radius are entitled to receive the weekly mileage allowance only if they are present for one or more legislative days during that calendar week.

b) For those senators who reside within fifty (50) miles of the State Capitol, the Legislature reimburses a sum of twenty-five dollars ($25.00) times the number of legislative days in a regular or special session. In addition, the member receives mileage reimbursement for those legislative days that he/she actually attends a daily session or a committee meeting on that same day. Mileage is reimbursed at the statutory state mileage reimbursement rate from the senator's home to the State Capitol and back.

The rate established for reimbursement of members who live over 50 miles from the state capitol is based on what the federal government allows for expenses when its employees are in Lincoln on government business. The rate is established by the General Services Administration and covers, among other items, meals and incidental expenses. For those members who live over 50 miles from the state capitol, the rate also covers

lodging. Legislators are required to submit completed reimbursement forms to receive payment for actual expenses incurred during session and the interim period. The policy allows legislators to obtain reimbursement for the period commencing with the first day following the adjournment sine die of the last regular session of the Legislature through the date of the submission of the expense reimbursement form. Thus, any expenses incurred during the interim period would be credited toward the maximum amount which is determined by the number of days a legislator attended a regular or special session. The Department of Administrative Services issues warrants for payment of the expenses, and the State Treasurer countersigns all such warrants.

The amount of reimbursement must not exceed expenses incurred by the members of the Legislature. To that end, the policy requires that each senator maintain expense records. A certified public accounting firm conducts audits of 10 to 12 randomly selected senators twice during each regular legislative session to ensure that the expense reimbursement does not exceed actual expenses incurred by the senators. The record includes two letters from the accounting firm verifying that the expenses incurred by the audited senators were greater than or equal to the reimbursement payments.

The trial court held that the Legislature was authorized to adopt a reimbursement system to provide reimbursement to legislators of actual expenses paid or incurred in the performance of their duties, and found no evidence demonstrating that the reimbursement policy violated article III, § 7, of the Nebraska Constitution.

## STANDARD OF REVIEW

In reviewing an equity action for a declaratory judgment, this court tries factual issues de novo on the record and reaches a conclusion independent of the findings of the trial court. See, *Robotham v. State*, 241 Neb. 379, 488 N.W.2d 533 (1992); *OB-GYN v. Blue Cross*, 219 Neb. 199, 361 N.W.2d 550 (1985). Where a declaratory judgment action presents questions of law, this court has an obligation to reach its conclusion independent from the conclusion reached by the trial court with regard to

these questions. *Robotham v. State, supra*.

We agree with the district court that no evidence supports plaintiff's contention that the reimbursement policy adopted by the Legislature is prohibited by article III, § 7, of the Nebraska Constitution.

## HISTORY

In *State ex rel. Douglas v. Beermann*, 216 Neb. 849, 347 N.W.2d 297 (1984), we declared Neb. Rev. Stat. §§ 50-201 and 50-202 (Cum. Supp. 1982) constitutional under article III, § 7, of the Nebraska Constitution, and held that legislators may receive reimbursement for expenses incurred in connection with the performance of their duties in addition to their salary and actual expenses in traveling by the most usual route once to and returning from each regular or special session. This court defined "expenses" as "the charges incurred by an employee in connection with the performance of his duties, and typically includ[ing] transportation, meals, and lodging while traveling." *Beermann*, 216 Neb. at 856, 347 N.W.2d at 302.

## REIMBURSEMENT POLICY

The Nebraska Constitution is not a grant, but, rather, is a restriction on legislative power, and the Legislature is free to act on any subject not inhibited by the Constitution. *Lenstrom v. Thone*, 209 Neb. 783, 311 N.W.2d 884 (1981). Pursuant to article III, § 7, and § 50-202, the Legislature was authorized to adopt a policy which would reimburse the members of the Legislature for actual expenses they paid or incurred while performing their duties.

Plaintiff contends that the reimbursement policy, which is based on a per diem allowance, is prohibited by article III, § 7, because it permits payment without regard to expenses actually paid or incurred by the legislator receiving reimbursement. In *State ex rel. Spire v. Public Emp. Ret. Bd.*, 226 Neb. 176, 181, 410 N.W.2d 463, 466 (1987), this court noted that under *Beermann*,

> a legislator could only receive $400 per month by way of salary and be reimbursed for expenses actually incurred in the performance of the legislator's official duties. In view of the fact that the moneys to be reimbursed to the

legislator in the performance of official duties for expenses incurred were to be equal to and not in excess of actual moneys paid or incurred by the legislator for and on behalf of the State, the legislator would not be receiving more than $400 per month as salary, plus the return of moneys actually expended on behalf of the State of Nebraska in the performance of official duties.

The reimbursement policy is consistent with the *Beermann* and *Public Emp. Ret. Bd.* cases. Under the policy, legislators must vouch on an expense reimbursement form that the amounts they are claiming have been paid or incurred by them and do not exceed the actual expenses they incurred. In order to receive reimbursement for expenses incurred in the performance of their duties as members of the Legislature, all legislators must complete a standardized reimbursement form. The legislator writes in the number of legislative days attended during the month and the rate at which compensation is allowed. The maximum amount of reimbursement permitted is calculated by multiplying the number of days the member attended a legislative session times the rate of reimbursement as established by the reimbursement policy.

Although the policy employs a per diem system to calculate an individual legislator's maximum reimbursement amount, the per diem is not an automatic payment. It operates as a ceiling on the amount of expenditures which are reimbursable. While the legislators may not be required to specifically enumerate on the form each expense incurred, they are required to maintain records of their expenses to enable verification during auditing. Two audits conducted in 1989, each auditing 12 randomly selected senators, verified that all the expenses paid or incurred by the senators were equal to or greater than the payments received under the reimbursement policy.

Plaintiff provides no evidence that legislators are claiming or receiving more money than necessary to satisfy their expenses in their capacity as legislators. The only evidence produced by plaintiff is an affidavit from Sen. Elroy M. Hefner in which the senator stated that he received and returned $1,184.20 in 1985 because it was in excess of his expenses. The current reimbursement policy was instituted in August 1988. The policy

in place in 1985 is not at issue in this action and is irrelevant to the determination of the validity of the current policy.

## TRAVEL EXPENSE

Plaintiff claims that the expense reimbursement policy is in contravention of article III, § 7, because it permits reimbursement for one round trip per week for those legislators residing more than 50 miles from the state capitol, and for those living within the 50-mile radius, the policy provides a daily mileage for those days when the Legislature is in session. Article III, § 7, provides in part: "In addition to his or her salary, each member shall receive an amount equal to his or her actual expenses in traveling by the most usual route *once to and returning from each regular or special session of the Legislature.*" (Emphasis supplied.)

Some courts with similar constitutional provisions have invalidated legislative efforts to reimburse legislators for mileage on the basis that travel expenses are personal expenses as distinguished from legislative expenses. Those courts have defined the former as those expenses incurred by a legislator in order to be present at the place of meeting, and the latter as those expenses necessary for the legislator to perform his duty as a legislator. See, *Opinion of the Justices*, 152 Me. 302, 140 A.2d 762 (1957); *Ferris v. Auditor General*, 318 Mich. 528, 28 N.W.2d 899 (1947); *Gallarno v. Long*, 214 Iowa 805, 243 N.W. 719 (1932).

In *State ex rel. Douglas v. Beermann*, 216 Neb. 849, 347 N.W.2d 297 (1984), we rejected this line of reasoning by holding that a legislator *must* receive his salary and actual expenses in traveling by the most usual route once to and returning from each regular or special session of the Legislature, and, in addition, *may* receive reimbursement for other expenses incurred in connection with the performance of his duties.

The facts of *Beermann* demonstrate that this court considered it constitutionally permissible for legislators to receive reimbursement for all expenses incurred in connection with the performance of their duties, including mileage for round trips made from the legislator's residence to the state capitol. *Beermann* was decided on stipulated facts. Sen. Ernie

Chambers filed five separate claims for mileage and meals reimbursement. Three of the claims were for 10 round trips made between Omaha and Lincoln for the same special session he had attended. The last two were for round trips made for two separate regular sessions. This court disagreed with the district court's finding that under the provisions of article III, § 7, Senator Chambers was entitled only to reimbursement of mileage expenses incurred for one round trip between Omaha and Lincoln for each of the three sessions he attended.

## CONCLUSION

Plaintiff has set forth no evidence to support his contention that the reimbursement policy established by the executive board provides reimbursement for expenses which have not been actually paid or incurred by members of the Legislature. The reimbursement policy is in conformance with the provisions of article III, § 7, of the Nebraska Constitution. The decision of the district court must be, and is, affirmed.

AFFIRMED.

HASTINGS, C.J., not participating.