STATE OF NEBRASKA, PLAINTIFF, V. GEORGE L. SHELDON, DEFENDANT.

FILED MARCH 21, 1907.    No. 15,080.

1. **Constitution: LEGISLATIVE INTERPRETATION: COURTS.** When the legislature has construed a provision of the constitution in an administrative matter in one of two equally reasonable ways, the court will not take the opposite view, but will adopt and follow the legislative construction.

2. ———: USE OF EXECUTIVE MANSION. The occupancy by the governor during his term of office of the executive mansion provided by the state, in which he is required by law to maintain his residence, is not a "perquisite of office or other compensation" and is not prohibited by the constitution.

ORIGINAL action to determine the right of defendant, as governor, to use the executive mansion without payment

of rent.   Defendant demurred to the petition.   *Demurrer sustained.*

*W. T. Thompson, Attorney General,* and *W. B. Rose.* for plaintiff.

*Norris Brown* and *Jesse L. Root, contra.*

LETTON, J.

This is an original action in this court.  The petition alleges that the suit is brought by the attorney general in behalf of the state by the direction and at the request of the governor.   The purpose of the action is to recover the sum of $100 for one month's use by the defendant of the dwelling house in Lincoln known as the "Executive Mansion."   A general demurrer has been filed to the petition and the cause submitted.

The house known as the executive mansion was purchased by the board of public lands and buildings in 1899 by the direction of the legislature, and the act authorizing and directing the purchase provides that, "after said property has been purchased and paid for, the board of public lands and buildings shall furnish said premises suitable for an executive mansion and the same shall be occupied by the governor."   Since its purchase it has been continuously occupied as an official residence by the several chief executives of the state up to this time, and is now occupied by the defendant, Honorable George L. Sheldon, in his official capacity as governor of the state of Nebraska.

By the provisions of section 19, art. V of the constitution, the general supervision and control of all buildings and grounds belonging to the state, except for educational purposes, is vested in the board of public lands and buildings, and the legislature by the provisions of article VII, ch. 83, Comp. St. has more fully defined the powers and duties of that body, and given the entire control of the sale or lease of the public grounds or buildings to the board

or by its warrant to the commissioner of public lands and buildings. By section 3 of this article the board is given general custody and charge of all buildings and institutions, and the grounds thereto, and is made responsible for their proper keeping and repair, and the commissioner of public lands and buildings is made the direct custodian of the same. Under these constitutional and statutory provisions the entire responsibility for the use of the buildings of the state is vested in the board of public lands and buildings, and, since that board has not authorized this action, it may be doubted whether the plaintiff has shown sufficient capacity to sue or whether the court is justified in passing upon the question submitted. However, this objection has not been raised by the defendant, and we will waive it and proceed to determine the case upon its merits.

The occupancy of the premises being admitted, the attorney general bases the state's right to recover rent upon section 24, art. V of the constitution, relating to the salaries of state officers: "The salaries of the governor, auditor of public accounts and treasurer, shall be two thousand five hundred dollars each per annum, and of the secretary of state, attorney general, superintendent of public instruction, and commissioner of public lands and buildings shall be two thousand dollars each per annum. The lieutenant governor shall receive twice the compensation of a senator, and after the adoption of this constitution they shall not receive to their own use any fees, costs, interest upon public moneys in their hands, or under their control, perquisites of office or other compensation, and all fees that may hereafter be payable by law for services performed by an officer, provided for in this article of the constitution, shall be paid in advance into the state treasury. There shall be no allowance for clerk hire in the offices of the superintendent of public instruction and attorney general." His argument is that, since the governor may not receive to his own use any "perquisites of office or other compensation," he is bound to

pay rent for his occupancy of the executive mansion as an official residence.   If his occupancy is not a "perquisite of office or other compensation" he concedes that the state is not entitled to recover.   The Standard dictionary defines a perquisite as "(1) any profit or pecuniary gain from service beyond the amount fixed as salary or wages; hence, any privilege or benefit claimed as due. (2) In law.   A fee that a person in office may legally receive beyond the requirements of his official duties." Worcester defines a perquisite as "something obtained in addition or in lieu of regular wages or salary."   By the Century dictionary the word, as used here, is defined as "an incidental emolument, profit, gain, or fee, over and above the fixed or settled income, salary, or wages; something received incidentally and in addition to regular wages, salary, fees," etc.   The phrase used is "perquisites of office or other compensation."   To compensate is to make suitable return for services.   It is evident then that the word, as used by the makers of the constitution, means a compensation or reward paid in return for the performance of an official duty.   The question then is whether the direction given by the legislature to occupy the executive mansion is something conferred upon the governor as a reward or return for official services.   It is no doubt true, as urged by the attorney general, that the rental value of the property is at least $100 a month.   He therefore contends that the use of the dwelling is an additional fee or salary of $1,200 a year paid to the governor in excess of the salary provided by the constitution.

In the construction of a governmental system upon the American plan, the broad outlines are furnished by the constitution, but all the details necessary to carry the powers of government into effect are provided by the action of the legislature.   The provisions of the constitution, while in one sense creative, also limit and define the powers to be exercised by the various departments of the government; but, except so far as its authority is limited or defined by the constitution, the legislature of

the state is as fully vested with governmental powers as the British parliament. See a discussion of this subject in *State v. Nelson*, 34 Neb. 169. The constitution must be read in connection with the facts of history and the development of a representative form of government, and this is what is done every day. There is nothing in the constitution which provides that the legislature shall furnish a state capitol building or furniture therefor, or that it shall furnish any office for the proper transaction of the executive affairs of the state, but there is no limitation upon its power to do so, and the creation of the office implies the power and the duty to provide means, accessories and instrumentalities for the purpose of carrying into effect the purpose for which the office was created. The custom of furnishing an official residence for the chief executive officer of the government has been in force for very many years in representative governments such as ours. It is a matter of common knowledge that Great Britain provides an official residence for its prime minister, and in fact the practice is so well established and has been continued for so long a time that the name of the street in which the official residence is situated is often used as synonomous with the administration, and "Downing Street" conveys an idea to a British subject as clear and well defined as the name of the "White House" does to an American citizen. This practice was followed upon the formation of the United States, and many of the states of the Union, recognizing the added dignity given to the office and other advantages to be derived from the residence of the chief executive officer being certain in location and convenient of access at all times, have provided official residences for the use of the governor of the state. Some of the states so providing a residence have similar restrictions in their constitution as exist in that of this state with regard to the acceptance of perquisites. Of course, this goes merely to show the meaning applied to such provisions by the respective legislatures. It cannot be questioned that the legislature had the

power, the right and the authority to purchase the property and to provide for its occupancy by the governor. This was done in the exercise of its proper powers exercised in behalf of what it deemed to be the public welfare, and its acts in that regard are not subject to review by any other department of the state government. There is no question then of legislative power involved.

The legislature has construed the provisions of the constitution to the effect that it had the right to provide an official mansion for the governor, and that he had the right to occupy it without contravening the constitutional provisions as to his compensation. That body has the right to construe the constitution, and if the language of that instrument is subject to two equally reasonable interpretations, if the legislature adopt one, the courts will not adopt the other. The legislature of 1899 did not believe that furnishing an official residence for the chief executive officer and requiring him to occupy the same conferred upon him any additional compensation for his services as governor, nor has any succeeding legislature so construed the constitution. The executive officers charged with the care, control and custody of the property of the state have followed the legislative construction, and at this time are making no complaint nor are they seeking to collect any rent or to take from the governor the possession of the property. It may be doubted whether the occupancy of this mansion does not impose upon the governor larger expenditures than those which would be exacted from him by the occupancy of a more humble abode for which he paid the usual rent, and, in place of being an additional reward or compensation, it may in fact be and probably is an additional drain upon his resources. We agree with the legislature that it is entirely in keeping with the proper administration of the government of the state with due regard to the dignity of that high office that the governor be provided with an official residence, and that his occupancy of the same, required by law, is in no sense a perquisite of office or of

the nature of additional compensation. We think the defendant is no more liable for rent of the official residence than any executive officer of a state institution is who is required for the proper conduct of his official duties to reside in the institution, the supervision of which is committed to his care or in which the services he renders are required to be performed. We are of the opinion that a contrary holding would be a strained construction of the constitution, and that, since the legislature has taken this view, which is supported by sound reason, we are not justified in adopting a contrary one, even if the language of the constitution might possibly be susceptible of other interpretation.

The petition fails to state a cause of action and the action is therefore

DISMISSED.