[Sac. No. 5900.   In Bank.   Aug. 13, 1948.]

T. FENTON KNIGHT, Petitioner, v. BOARD OF ADMINIS-TRATION OF THE STATE EMPLOYEES' RETIRE-MENT SYSTEM et al., Respondents.

Fred B. Wood, Joseph L. Knowles and Bernard Czesla for Petitioner.

Fred N. Howser, Attorney General, and Wilmer W. Morse, Deputy Attorney General, for Respondents.

CARTER, J.—The controversy here presented involves the validity of the 1947 legislation establishing a retirement system for members of the state Legislature. (Gov. Code, § 9350 et seq., as added by Stats., 1947, ch. 879.) There is a state employee's retirement system administered by a state agency (Gov. Code, § 20000 et seq.) and it is provided that the legislator's retirement system be administered by the same agency. (Gov. Code, § 9353.)

Various constitutional provisions are invoked by respondents as invalidating the legislation: First, "The members of the Legislature shall receive for their services the sum of one hundred dollars each for each month of the term for which they are elected, to be paid monthly in the even numbered years and to be paid during the regular legislative session in the odd numbered years at such times as may be provided by law and mileage to be fixed by law, all paid out of the State Treasury, such mileage not to exceed five cents per mile." (Cal. Const., art. IV, § 23.) Second, "Members of the Legislature shall receive no compensation for their services other than that fixed by the Constitution but each member shall be allowed and reimbursed expenses necessarily incurred by him while attending regular, special and extraordinary sessions of the Legislature. The amount of the expenses necessarily incurred by the respective members, while attending any such sessions, shall be determined and payment thereof provided for by joint rules of the Senate and Assembly. Such expense allowances may equal but shall not exceed the expense allowances now authorized for other elected State officers." (Cal. Const., art. IV, § 23b.) It is reasoned by respondents that payments made under a retirement system, that is, pensions to employees or officers, are, in effect, compensation for services; that the compensation allowable to legislators is limited by the above-quoted provisions of the

Constitution; and that hence, pensions cannot be given to members of the Legislature.

On the other hand those constitutional provisions, argues petitioner, do not control or are modified by a third provision of the Constitution reading: "The Legislature shall have power to provide for the payment of retirement salaries to employees of the State who shall qualify therefor by service in the work of the State as provided by law. The Legislature shall have power to fix and from time to time change the requirements and conditions for retirement which shall include a minimum period of service, a minimum attained age and minimum contribution of funds by such employees and such other conditions as the Legislature may prescribe, subject to the power of the Legislature to prescribe lesser requirements for retirement because of disability. . . ." (Cal. Const., art. IV, § 22a); that the phrase "employees of the state" as used therein, properly interpreted, is sufficiently broad to embrace members of the Legislature; that thus the first and second constitutional provisions with reference to compensation above quoted, are modified to the extent of permitting a retirement system for legislators. We believe those contentions are sound.

■ The term "employees" has no fixed meaning that must control in every instance. (*State* v. *Hughes,* 349 Mo. 1142 [164 S.W.2d 274]; 30 C.J.S., Employee, p. 226; 14 Words & Phrases [Perm. ed.], p. 357.) The flexibility of the term "employee" is of special significance when considered in connection with the rule that statutory provisions for pensions must be liberally construed to the end that their beneficial purposes are broadened rather than narrowed. (*Gibson* v. *City of San Diego,* 25 Cal.2d 930 [156 P.2d 737]; *McKeag* v. *Board of Pension Commrs.,* 21 Cal.2d 386 [132 P.2d 198]; *Dillard* v. *City of Los Angeles,* 20 Cal.2d 599 [127 P.2d 917]; *Casserly* v. *City of Oakland,* 215 Cal. 600 [12 P.2d 425]; *O'Dea* v. *Cook,* 176 Cal. 659 [169 P. 366].) For illustration, in *McKeag* v. *Board of Pension Comm'rs, supra,* at page 390, where the issue concerned the classes of the persons covered by the pension statute, this court said: "Defendants attribute a very restricted meaning to the language which specifies those employees who shall constitute members of the fire department . . . The language of section 185 ought not to be interpreted narrowly. Rather, a liberal construction is to be given, in accordance with the rule ordinarily used in construing pension legislation. · (*O'Dea* v. *Cook,* 176 Cal.

659 [169 P. 366]; *Casserly* v. *City of Oakland,* 215 Cal. 600 [12 P.2d 425]; *Dillard* v. *City of Los Angeles,* 20 Cal.2d 599 [127 P.2d 917].) As was said in *Hurley* v. *Sykes, supra* [69 Cal.App. 310 (231 P. 748)], p. 316, 'In ascertaining the intent and meaning of the charter provision a liberal construction should be indulged in to carry out the beneficial purposes aimed at. [Citing cases.] The spirit of these provisions is to protect all members of the fire department in the benefits which the fund insures, and they should not be narrowed by any strict or technical construction but should be interpreted on broad principles. Any other construction would result in a limitation of the beneficial provisions of the act, and render nugatory the manifest intention of the lawmaking power and do violence to its apparent purpose.' " Thus "employee" should be given a comprehensive meaning to include officers elected or appointed including legislators.

The concept that the word "employee" may have a sweeping connotation has been considered by the Legislature in the statute establishing a retirement system for county employees which was adopted before the adoption of the third constitutional provision above quoted. It defined "employees" as including "both appointive officers and employees" of the county. (Stats. 1919, ch. 373.) The act following the last cited act defined the term as any officer or employee whose compensation is fixed by the supervisors. (Stats. 1937, ch. 677.) The workmen's compensation laws define an employee as including "all elected and appointed paid public officers." (Lab. Code, § 3351.) In dealing with the subject of a retirement system for state employees (above referred to, as distinguished from the legislator's retirement act, *supra*) the Legislature created a commission to study the subject in 1927 (Stats. 1927, ch. 431) whose duty was to inquire into "the subject of retirement pensions . . . for state officers and employees." The report of that commission contained advice from the attorney general to the effect that it was not necessary for the commission to go into the question of the line of demarcation between officers and employees. In 1929, a bill was introduced in the Legislature, which, in defining state employees excluded "elective officers," intimating that otherwise they would be embraced within the term. At that same session of the Legislature the assembly constitutional amendment which became the third provision of the constitution above quoted was introduced. In the state em-

ployee's retirement act as later adopted in 1931, it was found necessary in defining "employees" to exclude elective officers. (Stats. 1931, ch. 700.)

It is true that the argument to the voters when the third constitutional provision above quoted was adopted, discussed matters more appropriate to a strict definition of employees; that the limitation on the compensation of legislators is clearly expressed in the first and second provisions above quoted; and that the voters have defeated a constitutional amendment to increase the compensation of the legislators, yet the main and controlling feature of the third provision above quoted is the authorization of a *retirement system for persons rendering service for and being paid by the state.* The arguments in favor of a retirement plan are equally applicable to all persons who are servants of the state, whether they are elected or appointed officers in the strict sense, or the lowliest workmen. One of the purposes of a retirement system is an inducement which will enable the government to secure and retain a more qualified government personnel. That purpose is more important in the case of officers than ordinary employees when we consider the more important functions they perform. It must be recognized that among the state officers there are none whose duties are more vital to the state than those imposed upon the members of the Legislature. We believe, therefore, that the purpose of the third constitutional provision above quoted will be more fully served if it embraces legislators. (See *Talbott* v. *Public Service Com.*, 291 Ky. 109 [163 S.W.2d 33].) Inasmuch as the third provision above quoted is not necessary to authorize the establishment of a retirement system for those whose remuneration is fixed by the Legislature, it may well be that the adoption of that provision was to authorize the establishment of a retirement system for officers whose compensation is fixed by the Constitution (legislators are such officers). There are many kinds and types of officers, quasi officers, and officers in name only. A policeman or patrolman is called an officer but he is completely subject to the direction of his superior officers. If one word is chosen to embrace all persons serving and paid by the state, "employee" would come the nearest to being an all inclusive term. When we speak of compensation for those persons in a broad sense, pensions are included. The references to compensation in the first and second constitutional provisions above quoted are more directly concerned

with current pay rather than deferred compensation—pension payments.

■ We are not convinced that the failure of the Legislature to enact the retirement act for its members for a considerable time after the adoption of the third provision above quoted in 1930 constitutes a contemporary construction thereof to the effect that they had no such power. Said provision is merely an enabling one and there may have been many reasons other than a thought of lack of power for the inaction. We believe the reasons heretofore discussed are more compelling.

■ It clearly follows that giving the term "employees" a meaning sufficiently broad, the third provision modifies the first and second provisions above quoted. The first constitutional provision above quoted has been as it now reads since 1924. The third provision was adopted in 1930. The second provision was adopted in 1944. The phrase in the latter provision that the members of the Legislature shall receive no compensation "other than that fixed by the constitution" fits into the picture. "Fixed by the constitution" includes the deferred compensation — retirement pay — embraced in the third provision. While the latter provision does not by itself name a certain compensation it authorizes the Legislature to adopt a pension system which has often been called deferred compensation. That is tantamount to the Constitution fixing it, inasmuch as the Legislature is authorized by the Constitution to state it precisely. The compensation is fixed or settled as the power to ascertain deferred compensation is fixed—it is given to the Legislature. (*San Francisco P. W. Factory* v. *Brickwedel*, 60 Cal. 166.)

■ It is urged that the members of the Legislature are entitled to receive $100 per month by virtue of the first constitutional provision above quoted and therefore the Legislature had no power in the retirement act to call for a deduction from the compensation to supply the retirement fund. The obvious answer to that is that it is wholly voluntary with the members of the Legislature whether they shall avail themselves of the benefits and assume the burdens of the system. (Gov. Code, §§ 9355-9355.3.)

It is ordered that a peremptory writ of mandate issue as prayed for by petitioner.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.