STATE OF NEBRASKA EX REL. ROBERT M. SPIRE, ATTORNEY GENERAL OF THE STATE OF NEBRASKA, RELATOR, V. PUBLIC EMPLOYEES RETIREMENT BOARD ET AL., RESPONDENTS.
410 N.W.2d 463

Filed August 7, 1987.   No. 86-819.

Robert M. Spire, Attorney General, and L. Jay Bartel, for relator.

Steven E. Achelpohl of Schumacher & Gilroy, for respondents.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, Shanahan, and Grant, JJ.

Per Curiam.

This is a declaratory judgment action, brought by the Attorney General of the State of Nebraska, as relator for the State of Nebraska, challenging the constitutionality of 1986 Neb. Laws, L.B. 1129, passed by the Nebraska Legislature on April 16, 1986, over the veto of then Governor Robert Kerrey. Respondents are public officers delegated duties to implement the law, including then Treasurer, now Governor, Kay Orr. Because this is a civil action in which the State is a party and because this action involves a matter relating to the revenue of the State, is of great public importance, requires a prompt answer, and does not involve any disputed questions of fact, we granted authority to the Attorney General to file an original action in the Supreme Court pursuant to Neb. Const. art. V, § 2, and the provisions of Neb. Rev. Stat. § 24-204 (Reissue 1985).

We have now reviewed the law in question, considered the arguments of the parties, and examined the applicable authorities. We are of the opinion that L.B. 1129 is in

contravention of the provisions of Neb. Const. art. III, § 7, and as such must be declared invalid and unenforceable.

L.B. 1129, which consists of 20 specific sections, attempts to create a pension program to provide retirement benefits to members of the Nebraska Legislature. Section 3 of the law establishes a retirement system to be known as the Legislators' Retirement System. Section 5 provides that the system is to be administered by the Public Employees Retirement Board, and § 9 creates a fund known as the Legislators' Retirement Fund. Under provisions of § 12 of the act, a member of the Legislature is eligible for a retirement allowance, upon his or her written application, if he or she has attained the age of 65, has completed 5 or more years of "creditable service," and is no longer a member of the Legislature. "Creditable service" is defined under the provisions of § 4 of the act to mean "all years of service in the Legislature for any person who becomes a member of the system." The act further provides that upon retirement eligible members shall receive a monthly allowance equal to $38 times the number of years of his or her creditable service, subject to certain other limitations set out in the act. Finally, § 20 provides for an appropriation of $177,500 for the period of July 1, 1986, to June 30, 1987, for payment into the Legislators' Retirement Fund.

Each side cites us to a series of legal principles to be used when attempting to examine the constitutionality of a legislative act. We are reminded that statutes are presumed to be constitutional, and all reasonable doubt must be in favor of the statutes' constitutionality. *State v. Mayhew Products Corp.*, 211 Neb. 300, 318 N.W.2d 280 (1982). The party challenging the constitutionality of a statute has the burden to show it is unconstitutional. *Weiner v. State ex rel. Real Estate Comm.*, 217 Neb. 372, 348 N.W.2d 879 (1984). Courts must apply and must enforce the Constitution as it is written, *State ex rel. Meyer v. Steen*, 183 Neb. 297, 160 N.W.2d 164 (1968), and constitutional provisions are not open to construction as a matter of course, *Gaffney v. State Department of Education*, 192 Neb. 358, 220 N.W.2d 550 (1974). Before construing a constitutional provision, it must be demonstrated that its meaning is not clear and that construction is necessary. *State ex*

*rel. School Dist. of Scottsbluff v. Ellis*, 168 Neb. 166, 95 N.W.2d 538 (1959). If a constitutional provision is construed, its words and terms are to be interpreted in their most natural and obvious sense, although they should receive a more liberal construction than statutes and are not subject to rules of strict construction. *Nebraska P. P. Dist. v. Hershey School Dist.*, 207 Neb. 412, 299 N.W.2d 514 (1980). The language of the Constitution is to be interpreted with reference to established laws, usages, and customs of the country at the time of its adoption, *State ex rel. Caldwell v. Peterson,* 153 Neb. 402, 45 N.W.2d 122 (1950), and *State v. Sheldon,* 78 Neb. 552, 111 N.W. 372 (1907); yet the terms and provisions of the Constitution "are constantly expanded and enlarged by construction to meet the advancing affairs of men." *State ex rel. State Railway Commission v. Ramsey*, 151 Neb. 333, 338, 37 N.W.2d 502, 506 (1949).

We turn first to the specific language of the Constitution which the Attorney General maintains invalidates the provisions of L.B. 1129. It is a section which we have had occasion in recent times to examine. See *State ex rel. Douglas v. Beermann*, 216 Neb. 849, 347 N.W.2d 297 (1984). Specifically, the language in question is found in Neb. Const. art. III, § 7, and reads in relevant part as follows:

> Each member of the Legislature shall receive a salary of *not to exceed* four hundred dollars per month during the term of his office. In addition to his salary, each member shall receive an amount equal to his actual expenses in traveling by the most usual route once to and returning from each regular and special session of the Legislature. Members of the Legislature shall receive no pay nor perquisites other than said salary and expenses . . . .

(Emphasis supplied.)

The question, simply stated, is: Does the granting of a retirement benefit to members of the Legislature constitute either "pay" or a "perquisite" otherwise prohibited by the provisions of Neb. Const. art. III, § 7?

While presented to us in a slightly different context, we did have an occasion to define the terms "pay" and "perquisite" in *State ex rel. Douglas v. Beermann, supra* at 854-55, 347 N.W.2d

at 301-02, where we said:

> Webster's Third New International Dictionary, Unabridged (1968), tells us that "pay," as a noun, in an archaic sense, means "something given in return by way of reward or retaliation"; that it is wages, salary, or remuneration. Black's Law Dictionary 1016 (5th ed. 1979) defines the noun "pay" as meaning compensation, wages, salary, commissions, or fees. . . .
>
> "Perquisite" is defined in Webster's Third New International Dictionary, Unabridged (1968), as casual income or profits; a privilege, gain, or profit incidental to an employment in addition to regular salary or wages; a gratuity or tip; something held or claimed as an exclusive right or possession. Black's Law Dictionary 1027 (5th ed. 1979) defines the word as meaning emoluments, fringe benefits, or other incidental profits or benefits attaching to an office or position. We have previously, in *State v. Sheldon*, 78 Neb. 552, 111 N.W. 372 (1907), defined perquisite as a gain or profit incidentally made from employment in addition to regular salary or wages. In that case we held that a residence provided by the state for occupancy by the Governor, at the place he was required by law to live, was not a "perquisite" within the meaning of a constitutional provision that the Governor might not receive any "perquisites of office or other compensation" in addition to his salary. We concluded that perquisite meant a compensation or reward for the performance of an official duty. [Citations omitted.]

We concluded in *State ex rel. Douglas v. Beermann, supra* at 855-56, 347 N.W.2d at 302, by saying:

> Therefore, the first 14 words of the third sentence of the constitutional provision in question, "Members of the Legislature shall receive no pay nor perquisites other than said salary," given their most natural and obvious meaning, say that Nebraska's legislators shall receive no wages, remuneration, compensation, fees, profit, or gain incidental to their office other than the salary mandated in the first sentence of the section.

We concluded that by reason of the provisions of Neb.

Const. art. III, § 7, a legislator could only receive $400 per month by way of salary and be reimbursed for expenses actually incurred in the performance of the legislator's official duties. In view of the fact that the moneys to be reimbursed to the legislator in the performance of official duties for expenses incurred were to be equal to and not in excess of actual moneys paid or incurred by the legislator for and on behalf of the State, the legislator would not be receiving more than $400 per month as salary, plus the return of moneys actually expended on behalf of the State of Nebraska in the performance of official duties.

We are unable to conceive how a retirement benefit awarded a former legislator for "creditable service" can be said not to be within one of the many meanings of either "pay" or "perquisites." Certainly the Legislature could not be making a gift of state money to its former members. The benefit can be nothing other than compensation for past services. Indeed, we have previously held that public employee retirement benefits or pensions constitute deferred compensation for services rendered. *Halpin v. Nebraska State Patrolmen's Retirement System*, 211 Neb. 892, 320 N.W.2d 910 (1982); *Gossman v. State Employees Retirement System*, 177 Neb. 326, 129 N.W.2d 97 (1964); *Wilson v. Marsh*, 162 Neb. 237, 75 N.W.2d 723 (1956).

Respondents point to decisions from other jurisdictions which they claim hold to the contrary. As we earlier indicated in *State ex rel. Douglas v. Beermann, supra,* relying on other decisions by other courts which in turn relied upon provisions of other constitutions serves little purpose in determining the meaning of our own specific Constitution.

Nonetheless, a careful analysis of the decisions upon which the respondents rely establishes that they differ from the situation presented by this case. *Knight v. Bd. etc. Employees' Retirement*, 32 Cal. 2d 400, 196 P.2d 547 (1948), reasoned that state legislators were state employees, and a constitutional provision specifically empowering the legislature to provide for the " 'payment of retirement salaries to employees of the State' " modified the constitutional prohibition against legislators' receiving any " 'compensation for their services other than that fixed by the Constitution.' " *Id*. at 401-02, 196

P.2d at 548. Even if Nebraska's legislators are employees of the state, a question not before us and thus not decided, there is no Nebraska constitutional provision which modifies its prohibition against paying our legislators any "pay" or "perquisites" other than the specified salary and expenses.

*Boryszewski v Brydges*, 37 N.Y.2d 361, 372 N.Y.S.2d 623, 334 N.E.2d 579 (1975), conforms with our analysis by concluding that a pension benefit was compensation earned during a legislator's " 'continuance in office,' " and thus did not violate a constitutional provision prohibiting the receipt of any " 'fees or perquisites of office or other compensation' " except the compensation " 'fixed by law' " to be paid " 'during [a legislator's] continuance in office.' " *Id.* at 366, 372 N.Y.S.2d at 628, 334 N.E.2d at 582-83. *Chamber of Commerce E. Union Cty. v. Leone*, 141 N.J. Super. 114, 357 A.2d 311 (1976), *aff'd on appeal* 75 N.J. 319, 382 A.2d 381 (1978), essentially presented the same problem as faced the *Boryszewski* court. Using the same rationale as did *Boryszewski*, the *Leone* court permitted the payment of retirement benefits.

*State ex rel. Todd v. Reeves*, 196 Wash. 145, 82 P.2d 173 (1938), has no relevance to our inquiry. Therein, the Constitution provided that a legislator could not be elected to any office " 'the emoluments of which shall have been increased, during the term for which he was elected.' " *Id.* at 148, 82 P.2d at 174. The *Reeves* court held that the adoption of a retirement plan for judges was not an "emolument"; thus, one who had been a legislator when the plan was adopted could seek election as a judge. In so ruling, the court said the word "emolument" implied actual pecuniary gain, rather than some imponderable and contingent benefit. There is nothing imponderable and contingent about paying a specified monthly allowance such as is contemplated by the plan before us. It should also be noted that the *Reeves* court specifically avoided deciding whether the retirement plan was a pension, adjusted or deferred compensation, or insurance.

The West Virginia Constitution prohibited paying legislators any "allowance or emolument" other than the salary and expenses specified in the Constitution. Yet *Campbell v. Kelly*,

202 S.E.2d 369 (W. Va. 1974), held that the legislators' pension system constituted neither an "allowance" nor "emolument." In reaching that determination, the *Campbell* court noted it was dealing with language adopted in 1872, at which time 64 percent of the adult labor force was engaged in agriculture, there were no state pension plans in the country, and private pension plans were very rare. The *Campbell* court thus concluded that pension plans could not have been within the contemplation of the framers of the Constitution. The obvious distinction is that we are not dealing with 1872 language. Although it is true the Nebraska language prohibiting legislators from receiving any "pay" or "perquisites" other than the sums otherwise specified predated the 1934 initiative, and first appeared in Neb. Const. art. III, § 4 (1875), the fact remains that such language was retained in 1934. The relevant date therefore is 1934, and the record is silent as to the situation which then prevailed with respect to pension plans. More fundamentally, the rationale used by the *Campbell* court overlooks that, irrespective of whether the 1872 framers of the West Virginia Constitution contemplated pensions, they clearly stated that legislators were to receive nothing other than the sums specified in the Constitution. The *Campbell* court simply ignored that direction. Moreover, this jurisdiction is committed to the rule that the intent of the voters in adopting an initiative amendment to the Nebraska Constitution must be determined by the words of the initiative amendment itself, because there is no meaningful way to determine the motivations for submitting the initiative to the electorate or to determine the intent of those voting for its enactment. *Omaha Nat. Bank v. Spire*, 223 Neb. 209, 389 N.W.2d 269 (1986).

Nor does the fact that the Legislature has chosen to declare the act constitutional in its preamble alter the true nature of the act. It is true that if the purpose of the act is unclear and the Legislature declares a public purpose which is not invalid on its face, a court will give strong consideration to the intent of the Legislature. See *State ex rel. Douglas v. Nebraska Mortgage Finance Fund*, 204 Neb. 445, 283 N.W.2d 12 (1979). Yet, if the act is clearly contrary to the Constitution, it is for the courts to make that decision, regardless of the proclaimed legislative

intent. See *State ex rel. Wright v. Pepperl*, 221 Neb. 664, 380 N.W.2d 259 (1986). Such is the instant case.

Respondents have very properly and accurately described the great inequity our decision will bring about. Respondents specifically call our attention to the fact that under the current salary limitations members of the Nebraska Legislature are generally unable to save for old age security and, further, unable to earn credit in an alternate plan where they work because of their legislative duties. We are advised by respondents that, should we declare L.B. 1129 invalid, Nebraska's will be but one of only seven state legislatures which do not have pension programs for their members. While all of this is true and a fact which the people of the State of Nebraska should consider, it is not a basis upon which a court may ignore, nor amend, the provisions of the state's Constitution. Our function is to adhere to the Constitution, regardless of the inequities that may result.

L.B. 1129, adopted by the Legislature on April 16, 1986, is hereby declared to be invalid and unenforceable, and the respondents, and each of them, are hereby enjoined from performing any of the duties or obligations required thereunder.

JUDGMENT FOR RELATOR.