REQUESTED BY: Mark P. Reynolds, Chairman Nebraska Tax Equalization and Review Commission
You have requested our opinion on several questions pertaining to the eligibility of members of the Nebraska Tax Equalization and Review Commission ["TERC" or "Commission"] to receive various benefits available to employees of the State of Nebraska, including sick leave, vacation leave, and health insurance. In addition to questions pertaining to the Commissioners' ability to receive such benefits, you have requested our advice on the computation of sick and vacation leave benefits for the Commissioner recently appointed to the Commission after several years of service as a Nebraska Legislator, the payment of a portion of accrued unused sick leave to Commissioners upon retirement or voluntary resignation in lieu of retirement, and whether Commissioners are required to work forty hours per week. Your questions, and our responses, are below.
1. Does holding an elected office as a member of the Nebraska Unicameral Legislature constitute "years of employment" for purposes of calculating accrual of sick and vacation leave pursuant to Neb. Rev. Stat. § 81-1320 and Neb. Rev. Stat. § 81-1328?
Your initial question arises as a result of the Governor's appointment of a Commissioner who, prior to becoming a member of the TERC, held elected office as a Nebraska Legislator for approximately eleven years. The issue is whether this Commissioner's previous service as a member of the Legislature qualifies as "years of service" or "years of employment" for purposes of determining the amount of sick and vacation leave accrued by this Commissioner.
The Nebraska statutes dealing with sick leave for state employees are found at Neb. Rev. Stat. §§ 81-1320 to 81-1326 (1999). Section81-1320 provides that "[p]ermanent employees of the State of Nebraska shall be entitled to sick leave" computed at a rate based on the employee's period of service. Employees earn 96 hours of sick leave each year for the first five years of continuous employment, and "shall thereafter be entitled to an additional eight hours of sick leave for each year of service not to exceed two hundred forty hours per calendar year." Neb. Rev. Stat. § 81-1320 (1999). "[E]mployees who are regularly employed less than forty hours a week shall be entitled to sick leave proportionate to their regular workweek." Id. Employees of the Legislature or Legislative Council are, "for sick leave entitlement purposes, credited with one continuous year of employment for each two hundred sixty working days such employee was employed by the Legislature or Legislative Council." Id. The definition of "state employee" for sick leave purposes is contained in Neb. Rev. Stat. § 81-1321 (1999), which provides:
 As used in sections 81-1320 to 81-1326, state employee shall mean any person or officer employed by the state including the head of any department or agency, except when such head is a board or commission, and who works a full-time or part-time schedule on an ongoing basis.
Vacation leave for state employees is governed by Neb. Rev. Stat. § 81-1328 (1999). As is the case with sick leave, state employees are entitled to vacation leave at a rate based on the employee's length of employment. Employees earn 96 hours of vacation leave each year for the first five years of continuous employment, and "shall thereafter be entitled to eight additional hours of vacation leave with full pay for each additional year of continuous state employment up to a maximum of two hundred hours of vacation leave a year." Neb. Rev. Stat. § 81-1328
(1999). "Employees who are regularly employed less than forty hours a week shall be entitled to vacation leave proportionate to their regular workweek." Id. Employees of the Legislature or Legislative Council are, "for vacation leave entitlement purposes, credited with one continuous year of employment for each two hundred sixty working days such employee was employed by the Legislature or Legislative Council." Id. The definition of "state employee" for vacation leave purposes provides:
 As used in this section, state employee shall mean any person or officer employed by the state including the head of any department or agency, except when such head is a board or commission, and who works a full-time or part-time schedule on an ongoing basis.
Id.
The definitions of "state employee" for purposes of entitlement to sick and vacation leave in §§ 81-1321 and 81-1328 both define the term to "mean any person or officer employed by the state including the head of any department or agency, except when such head is a board or commission, and who works a full-time or part-time schedule on an ongoing basis." "In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute, considered in its plain, ordinary, and popular sense." Big John's Billiards, Inc. v. Balka, 260 Neb. 702, 707,619 N.W.2d 444, 449 (2000). We do not believe the language used in defining "state employee" in these statutes demonstrates a legislative intent to include members of the Nebraska Legislature as "state employees." The use of the phrase "person or officer employed by the state" is not indicative of an intent to include elected officials such as legislators in the definition of "state employee." While legislators undoubtedly hold public office, they are not "employed," but are, of course, elected. Moreover, legislators do not "work a full-time or part-time schedule on an ongoing basis," as this phrase logically refers to regular employment on a set schedule done on a continuous basis. Legislators undeniably work very hard, and, both in and out of session, devote a substantial amount of time to their duties. Nevertheless, the very nature of their office is that such duties are not, other than the calendaring of days for a legislative session, in any sense tied to a "schedule" set "on an ongoing basis."
Further, "[i]n construing a statute, it is presumed that the legislature intended a sensible, rather than an absurd result. . . ." Hayes v. Applegarth, 10 Neb. App. 351, 354, 631 N.W.2d 547, 549 (2001). The Nebraska Constitution provides that "[e]ach member of the Legislature shall receive a salary of not to exceed one thousand dollars per month during the term of his or her office." Neb. Const. art. III, § 7. "In addition to his or her salary, each member shall receive an amount equal to his or her actual expenses in traveling by the most usual route once to and returning from each regular or special session." Id. "Members of the Legislature shall receive no pay nor perquisites other than his or her salary and expenses. . . ." Id. The salary of Nebraska legislators is currently set "in an amount equal to the maximum authorized by the Constitution of Nebraska." Neb. Rev. Stat. § 50-123.01 (1998).
The Nebraska Supreme Court has interpreted art. III, § 7, to mean that a legislator may only receive the maximum salary authorized by the Constitution and reimbursement for expenses necessarily incurred in performing legislative duties. State ex rel. Douglas v. Beermann,216 Neb. 849, 857, 347 N.W.2d 297, 302 (1984). In Beermann, the portion of art. III, § 7, providing legislators "shall receive no pay nor perquisites other than" their salary and expenses was interpreted to mean that "[m]embers of the Legislature shall receive no wages, remuneration, compensation, fees, profit, or gain incidental to their office other than the salary mandated in the [Constitution] and reimbursement for expenses incurred in connection with the performance of their duties." Id. In its opinion, the Court noted definitions of "pay" including "wages, salary, or remuneration" (Webster's Third New International Dictionary, Unabridged (1968)) or "compensation, wages, salary, commission, or fees" (Black's Law Dictionary 1016 (5th ed. 1979)), as well as definitions of "perquisite" including "a privilege, gain, or profit incidental to an employment in addition to regular salary or wages" (Webster's Third New International Dictionary, Unabridged (1968)), and "emoluments, fringe benefits, or other incidental profits or benefits attaching to an office or position." (Black's Law Dictionary 1027 (5th ed. 1979)).216 Neb. at 854-55, 347 N.W.2d at 301.
Subsequent to its decision in Beermann, the Court held a statute providing retirement benefits to legislators violated art. III, § 7, as it provided "pay" or "perquisites" to members of the Legislature in addition to the salary and expenses authorized by the Constitution. State ex rel. Spire v. Public Employees Retirement Bd., 226 Neb. 176,410 N.W.2d 463 (1987). Relying on the definitions of "pay" and "perquisites" in Beermann, the Court stated it was "unable to conceive how a retirement benefit awarded a former legislator for `creditable service' can be said not to be within one of the many meanings of either `pay' or `perquisites.'" Id. at 181, 410 N.W.2d at 466. In reaching its conclusion, the Court distinguished a California case (Knight v. Bd. etc. Employees' Retirement, 32 Cal.2d 400, 196 P.2d 547 (1948)) holding a constitutional provision allowing the provision of retirement to state employees authorized retirement benefits for California legislators, stating: "Even if Nebraska's legislators are employees of the state, a question not before us and thus not decided, there is no Nebraska constitutional provision which modifies its prohibition against paying our legislators any `pay' or `perquisites' other than the specified salary and expenses." 226 Neb. at 182, 410 N.W.2d at 466.
Interpreting the provisions for sick and vacation leave for state employees in §§ 81-1320 to 81-1328 to apply to legislators would not be sensible, and leads to an absurd result. Legislators are entitled to the maximum salary set by the Constitution, and can receive no other pay or perquisites. Legislators receive this salary regardless of the amount of sick or vacation leave they may need or desire to utilize. Granting or accrual of paid sick or vacation leave simply makes no sense in the case of legislators.
Indeed, interpreting §§ 81-1320 to 81-1328 to provide sick and vacation leave to members of the Legislature would likely violate the constitutional restriction against legislators receiving any "pay" or "perquisites" other than their constitutionally authorized salary and expenses. Construing §§ 81-1321 and 81-1328 to include legislators in the definition of "state employees" eligible for sick or vacation leave would appear to provide financial gain or benefit in addition to the salary allowed legislators under Neb. Const. art. III, § 7. This would be particularly true in the case of payments for unused sick leave under § 81-1325 and vacation leave under § 81-1328, which would, if applicable, clearly constitute "pay" or "perquisites" to legislators in addition to their salary. "When a statute is susceptible of two constructions, under one of which the statute is valid while under the other of which the statute would be unconstitutional or of doubtful validity, that construction which results in validity is to be adopted." State v. Hookstra, 263 Neb. 116, 124, 638 N.W.2d 829, 836 (2002). The proper construction of §§ 81-1321 and 81-1328, which removes any doubt as to their constitutionality, is that which recognizes that legislators are not "state employees" for purposes of application of the sick and vacation leave benefits provided in §§ 81-1320 to 81-1328.
Thus, we conclude that legislators are not "state employees" eligible for sick or vacation leave benefits under §§ 81-1320 to81-1328. Accordingly, the years of service as a legislator by the Commissioner recently appointed after leaving the Legislature cannot be used to determine the rate at which sick or vacation leave accrues for this Commissioner.
2. Is there any statutory authority for the premise that Commissioners are entitled to sick leave benefits, vacation leave benefits, health insurance benefits, or any other benefits offered employees of the State of Nebraska?
Neb. Rev. Stat. § 77-5004(7) (Cum. Supp. 2002) provides: "The commissioners shall be considered employees of the state for purposes of sections 81-1301 to 81-1391 and 84-1601 to 84-1615." Neb. Rev. Stat. §§ 81-1301 to 81-1391 (1999 and Cum. Supp. 2002) include the provisions governing sick leave and vacation leave for state employees, which are found in §§ 81-1320 to 81-1328. Neb. Rev. Stat. §§ 84-1601
to 84-1615 (1999 and Cum. Supp. 2002) contain the group life and health insurance programs established for state employees. This language was added to § 77-5004 by 1996 Neb. Laws, LB 1038.
"In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning." Spradlin v. Dairyland Ins. Co., 263 Neb. 688, 692, 641 N.W.2d 634, 637 (2002). "[A]n appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous." Nye v. Fire Group Partnership, 263 Neb. 735, 738, 642 N.W.2d 149, 152 (2002). "[A] statute is open to construction to determine its meaning only when the language used requires interpretation or may reasonably be considered ambiguous." City of Omaha v. Kum Go, L.L.C., 263 Neb. 724, 733, 642 N.W.2d 154,159 (2002).
The plain and unambiguous language of § 77-5004(7) establishes that Commissioners are deemed to be state employees for purposes of eligibility for sick or vacation leave benefits in §§ 81-1320 to81-1328, as well as life and health insurance benefits under §§ 84-1601
to 84-1615. While we believe this language is clear and thus resort to legislative history is not necessary to determine its meaning, the discussion by the sponsor of the amendment adding this language makes it clear that the Legislature intended to make Commissioners state "employees for purposes of the various sections," including "health insurance benefits and coverage under the state plan," and that the amendment was "a matter of cleanup. . . ." Floor Debate on LB 1098, 94th Leg., 2nd Sess. 11670 (February 28, 1996) (Statement of Sen. Kristensen). The clear language of the statute, as well as this history, confirms that the Legislature intended for Commissioners to be treated as state employees for purposes of entitlement to sick and vacation leave, as well as insurance benefits.
With respect to your inquiry as to "other benefits offered employees of the State of Nebraska" available to Commissioners, the other primary benefit to be considered is participation by Commissioners in the retirement plan established by the State Employees Retirement Act, Neb. Rev. Stat. §§ 84-1301 to 84-1331 (1999 and Cum. Supp. 2002). "Employee" is defined to mean "any person or officer employed by the State of Nebraska whose compensation is paid out of state funds or funds controlled or administered by a state department through any of its executive or administrative officers when acting exclusively in their respective official, executive, or administrative capacities. . . ." Neb. Rev. Stat. § 84-1301(9) (Cum. Supp. 2002). While various persons or officers are excluded from this definition, members of the Commission are not among those persons or officers excluded. Accordingly, we believe that Commissioners are "employees" for purposes of participation in the State Employees Retirement System.
The last sentence of § 84-1301(9), however, provides: "Any individual appointed by the Governor may elect not to become a member of the State Employees Retirement System of the State of Nebraska." Previously, in interpreting this provision, we concluded that "appointment" involves "some official action or exercise of authority to designate or select a person for an office." Op. Att'y Gen. No. 95099 (December 20, 1995). We determined this language was intended to allow only "state officers" appointed by the Governor to opt out of the State Employees Retirement System. Id. at 2. We identified the "indicia [to] be applied to determine whether a particular official . . . appointed by the Governor is a state officer who may elect out of the Retirement System" included "the ideas of tenure, duration, emolument and duties" of office, and whether the office involved "`a governmental position, the duties of which invest the incumbent with some aspect of the sovereign power.'" Id. at 3-4 (quoting State ex rel. Spire v. Conway, 238 Neb. 766,772, 472 N.W.2d 403, 407 (1991)).
Neb. Const. art. III, § 28, provides, in pertinent part:
 By January 1, 1997, there shall be a Tax Equalization and Review Commission. The members of the commission shall be appointed by the Governor as provided by law. The commission shall have power to review and equalize assessments of property for taxation within the state and shall have such other power and perform such other duties as the Legislature may provide. The terms of office and compensation of members of the commission shall be as provided by law.
Commissioners are "appointed by the Governor with the approval of a majority of the members of the Legislature." Neb. Rev. Stat. §77-5003(1) (Cum. Supp. 2002). After expiration of the initial terms of Commissioners, "each term shall be for six years." Neb. Rev. Stat. §77-5003(2) (Cum. Supp. 2002). In addition to its constitutional statewide equalization duties, the Commissioners perform numerous statutory powers and duties imposed by the Legislature. See Neb. Rev. Stat. § 77-5007
(Cum. Supp. 2002). The powers and duties of the Commission involve the exercise of the sovereign power of the State. Thus, Commissioners are "individual[s] appointed by the Governor" within the meaning of the last sentence of § 84-1301(9) and, as such, may elect not to become members of the State Employees Retirement System. That election, of course, is voluntary, and, absent exercising such option, Commissioners are members of the Retirement System upon satisfying the requirements for participation in the Retirement System.
3. If such statutory authority exists what impact, if any, did the Constitutional Amendment which revised Article IV, Section 28 of the Nebraska Constitution have on that authority?
The TERC was originally established by legislation enacted in 1995. 1995 Neb. Laws, LB 490, §§ 1-21 (codified at Neb. Rev. Stat. §§77-5001 to 77-5021 (Supp. 1995)). Initially, TERC's powers and duties were defined by statute, and were limited to hearing appeals of certain decisions relating to actions of county boards of equalization and the Property Tax Administrator regarding the taxation of real or personal property. 1995 Neb. Laws, LB 490, § 7 (codified at Neb. Rev. Stat. § 77-5007 (Supp. 1995)). As noted previously, an amendment to §77-5004 was adopted in 1996 specifying that Commissioners were to "be considered employees of the state for purposes of sections 81-1301 to81-1391 and 84-1601 to 84-1615." 1996 Neb. Laws, LB 1093, § 3 (codified at Neb. Rev. Stat. § 77-5004(7) (1996)). In May of 1996, the electorate approved the amendment to Neb. Const. art. IV, § 28, requiring that "[b]y January 1, 1997, there shall be a Tax Equalization and Review Commission . . .," and conferring statewide equalization authority on the Commission.
In Op. Att'y Gen. No. 96054 (July 18, 1996), we considered the effect of adoption of this constitutional amendment, and concluded that the amendment, upon becoming effective, divested the State Board of Equalization and Assessment of authority to review and equalize assessments of property for taxation within the state, and that such authority therefore resided with the TERC. In reaching this conclusion, we noted that TERC had already been created by statute, and had been granted various statutory duties prior to adoption of the constitutional amendment. Id. at 7. We determined that the grant of authority to TERC to exercise statewide equalization authority was self-executing, and that legislative action was not required to permit TERC to exercise this constitutional duty. Id. Finally, we concluded that, by virtue of the adoption of the constitutional amendment, "all statutes pertaining to the State Board's exercise of duties related to statewide equalization . . . are inconsistent with the constitutional authority now vested in the TERC, and are repealed by implication." Id. at 7-8. The Legislature has, since that time, adopted legislation relating to TERC's exercise of its statewide equalization power. See Neb. Rev. Stat. §§ 77-1504.01 and77-5022 to 77-5028 (Cum. Supp. 2002).
We do not believe that adoption of the constitutional amendment granting TERC statewide equalization power in any way impacts the Commissioners' status as "employees" established by § 77-5004(7), even though the amendment to § 77-5004 providing such status was adopted prior to passage of the constitutional amendment. It appears your question is based on concern that adoption of the constitutional amendment may perhaps have repealed § 77-5004(7) by implication. Our earlier opinion did note the general rule that "[a] statute opposed to the plain terms of a subsequently adopted constitutional provision must be regarded as repealed by implication." Op. Att'y Gen. No. 96054 at 8 (quoting 16 C.J.S. Constitutional Law § 41 (1984)). The statute providing that Commissioners are considered state employees for purposes of §§ 81-1301 to 81-1391 and 84-1601 to 84-1615 is not inconsistent with the constitutional duty imposed on the Commission to review and equalize assessments in the state, at least not to the extent it recognizes Commissioners are entitled to sick and vacation leave benefits as provided in §§ 81-1320 to 81-1328 and life and health insurance under §§ 84-1604 to 84-1615. Thus, the constitutional amendment does not impact Commissioners' eligibility for these benefits as state employees, or their status as employees for purposes of the State Employees Retirement Act.
4. Assuming no constitutional impact on the statutory authority, does the Commission Chair qualify for all benefits in light of the provisions of Neb. Rev. Stat. § 81-1321?
As noted previously, the statutes governing sick leave for state employees are contained in Neb. Rev. Stat. §§ 81-1320 to 81-1326
(1999). Section 81-1321 provides:
 As used in sections 81-1320 to 81-1326, state employee shall mean any person or officer employed by the state including the head of any department or agency, except when such head is a board or commission, and who works a full-time or part-time schedule on an ongoing basis. (Emphasis added).[1]
Recently, in Op. Att'y Gen. No. 99047 (November 15, 1999), this office considered the effect of the language in § 81-1321 providing that "state employee" included "the head of any department or agency, except when such head is a board or commission. . . ." We concluded that "the plain language of § 81-1321 . . . clearly excludes members of boards and commissions in Nebraska from the definition of state employee used in connection with the statutory provisions dealing with sick leave . . ." and, "[a]s a result, members of boards or commissions are not subject to the provisions of §§ 81-1320 through 81-1326." Op. Att'y Gen. No. 99047 at 3.
Application of this construction of § 81-1321 would preclude not only the Commission Chair, but all Commissioners, from being considered state employees for purposes of entitlement to sick leave benefits under §§ 81-1320 to 81-1326. Presumably, identical language excluding members of boards or commission from the definition of state employee for vacation leave purposes in § 81-1328 would also bar Commissioners from entitlement to vacation leave.
We decline to adopt such a construction of §§ 81-1321 and 81-1328
with respect to the Commission, however, because it would conflict with the specific statute providing that "commissioners shall be considered employees of the state for purposes of sections 81-1301 to 81-1391. . . ." Neb. Rev. Stat. § 77-5004(7) (Cum. Supp. 2002). It is well-established that "[s]pecial provisions of a statute in regard to a particular subject will prevail over general provisions in the same or other statutes so far as there is a conflict." State v. Seberger,257 Neb. 747, 750, 601 N.W.2d 229, 231 (1999). In our view, the specific provisions of § 77-5004(7) establishing that Commissioners are "employees of the state for purposes of sections 81-1301 to 81-1391 . . ." controls over the general language in §§ 81-1321 and 81-1328 which would, if applicable, exclude Commissioners from being considered state employees entitled to sick and vacation leave benefits. Thus, we conclude that all Commissioners, by virtue of the plain and specific language in § 77-5004(7), are to be considered state employees eligible for sick and vacation leave benefits under §§ 81-1320 to 81-1328.
5. If Commissioners are "employees" of the State of Nebraska, is a Commissioner who has reached a qualifying age pursuant to Neb. Rev. Stat. § 81-1325 eligible for payment of one-fourth of his or her accrued sick leave if he or she is not reappointed for another term?
We have, of course, concluded that Commissioners are "state employees" for sick leave purposes under Neb. Rev. Stat. §§ 81-1320 to81-1326 (1999) by virtue of Neb. Rev. Stat. § 77-5004(7). Neb. Rev. Stat. § 77-1325 (1999), which provides for payment of a portion of accumulated sick leave to employees in certain circumstances states, in pertinent part:
 Each employee who meets the minimum age and service requirements for retirement under any existing state or federal retirement system shall, upon termination of employment with the state by reason of retirement or voluntary resignation in lieu of retirement, be entitled to a one-time payment of one-fourth of his or her accumulated unused sick leave, with the rate of payment being based upon his or her regular pay at the time of termination or retirement.
Your question concerns whether a Commissioner who has reached the qualifying age and service requirements for retirement set forth in the statute is eligible for payment of one-fourth of his or her accumulated unused sick leave if the Commissioner is not reappointed by the Governor. You indicate that a former Commissioner who had reached qualifying age and satisfied the service requirement applied for reappointment, was not reappointed, and that payment of accumulated unused sick leave was made to the Commissioner pursuant to § 81-1325. You further indicate that this situation could arise in the future if a current Commissioner is not reappointed.
Section 81-1325 authorizes a one-time payment of one-fourth of an employee's accumulated unused sick leave only if the employee satisfies the age and service requirements for retirement in the statute and terminates employment with the state "by reason of retirement or voluntary resignation in lieu of retirement. . . ." In responding to your question, we assume the Commissioner has reached the qualifying age and service requirements in § 81-1325, so the issue turns on whether the fact that the Commissioner is not reappointed precludes the Commissioner from receiving the one-time sick leave payment allowed in § 81-1325.
We do not believe that the Governor's decision not to reappoint a Commissioner is determinative of whether a Commissioner may receive the one-time sick leave payment provided in § 81-1325. A Commissioner who is not reappointed still would have the option of retiring or voluntarily resigning in lieu of retirement, provided, of course, they met the age and service requirements in § 81-1325. You do not indicate whether the Commissioner who was not reappointed and received the one-time payment retired or voluntarily resigned in lieu of retirement when they were not reappointed. In any event, should this situation arise in the future, a Commissioner who is not reappointed would be eligible to receive payment of one-fourth of their accumulated unused sick leave if they retired or voluntarily resigned in lieu of retirement.
6. If Commissioners are "employees," are they required to work 40-hours per week pursuant to Neb. Rev. Stat. § 84-1001? If so, does travel to and from the Commissioner's place of residence qualify as work? Does the answer depend on whether the Commissioner represents a Congressional District and is required to be a resident of the district which he or she represents pursuant to Neb. Rev. Stat. § 77-5004(1)?
Your final series of questions concerns whether Commissioners are "state officers" or "employees" required to "render not less than forty hours of labor each week . . ." pursuant to Neb. Rev. Stat. § 84-1001(1) (1999). This subsection provides in full:
 All state officers and heads of departments and their deputies, assistants, and employees, except permanent part-time employees, temporary employees, and members of any board or commission not required to render full-time service, shall render not less than forty hours of labor each week except in which a paid holiday may occur.
Subsection (2) of § 84-1001 further provides that "[r]egular work by such employees shall not be performed on paid holidays, Saturdays, or Sundays except in case of an emergency or when otherwise ordered or deemed essential by the Governor." Neb. Rev. Stat. §84-1001(2) (1999).
The plain language of § 84-1001 indicates that all state "officers" or "employees," with the exception of part-time or temporary employees or members of boards or commissions not required to render full-time service, "shall render not less than forty hours of labor reach week. . . ." Neb. Rev. Stat. § 84-1001(1) (1999). Commissioners are "officers" as well as "employees," and are required to "devote [their] full time and efforts to the discharge of [their] duties. . . ." Neb. Rev. Stat. § 77-5004(2) (Cum. Supp. 2002). Thus, Commissioners must work "not less than forty hours" per week (except in weeks in which a paid holiday occurs) by virtue of § 84-1001(1).[2]
Having concluded that Commissioners are required to work "not less than forty hours" per week, you ask whether travel to and from work by Commissioners to TERC's headquarters in Lincoln, Nebraska, constitutes "work." Your question is prompted by the restriction in § 84-1001(2) that "[r]egular work" by employees "shall not be performed on paid holidays, Saturdays, or Sundays except in case of an emergency or when otherwise ordered or deemed essential by the Governor." The issue raised by this provision is whether travel to and from a Commissioner's residence qualifies as work, which may not be compelled on a paid holiday, Saturday, or Sunday absent an emergency or gubernatorial order. You also inquire whether application of the restriction is dependent upon the Commissioner's status as a Commissioner representing a congressional district of which he or she is required to be a resident.
In considering these issues, it is necessary to first examine the meaning of the requirement in Neb. Rev. Stat. § 77-5004(1) (Cum. Supp. 2002) that "each commissioner representing a congressional district" be "a resident of the district he or she represents." Your request assumes that this language requires that a Commissioner representing a congressional district must physically reside in the district after their appointment. We do not believe that is the case.
In a previous opinion, we discussed the meaning of similar language requiring that members of the Public Service Commission "be residents of the district from which they are elected." Rep. Att'y Gen. 1977-78 443 (Opinion No. 282, September 15, 1978). Addressing the meaning of this residency requirement, we stated:
 [I]t is our belief that residence is synonymous with domicile. Domicile is generally defined as being a legal relationship the individual has with a particular locality either because his home is there or it is because it is assigned to him by law. Every person has a domicile, although persons may have multiple residences or no residence. The Nebraska Supreme Court in Dilsaver v. Pollard, 191 Neb. 241, 214 N.W.2d 478, established that the definition of residence or domicile is the place where one's habitation is fixed without any present intention of removing therefrom. In the initial instance, a person to be elected as a Public Service Commissioner must have a residence or domicile, used interchangeably in this sense, in the district from which he is to be elected. Subsequent to this election he is not entitled to alter his domicile that is his legal residence. Under the statute, if such event occurs, then the office becomes vacant. However, it is possible for an individual to have more than one residence pursuant to Dilsaver v. Pollard, supra. This is particularly true with respect to an elected official who is to perform duties at a location other than that in the district from which he was elected. Our Supreme court in State ex rel. Brazda v. Marsh, 141 Neb. 817, 5 N.W.2d 206 (1942), quoting from a Montana case stated:
 "Under the Constitution and at common law, absence from one's voting residence resulting from acceptance of employment with state or federal government does not work a change of residence for purpose of holding office, when person involved does not so intend.' . . ."
 The analysis utilized by the court was that in order to alter one's domicile there must cojoin an actual removal from the domicile with an intention not to return. Whereas a person elected from a district where the duties are to be performed in another area may remove his actual living abode to that other area but not intend to remove his domicile or residence from the district of his election.
* * *
 Thus, although a commissioner is required to maintain a residence in the district from which he is elected, this requirement does not entail actual physical presence in that district. It is sufficient if the commissioner's domicile remains in the district from which he is elected and the commissioner does not intend to alter or change his legal domicile even though he may physically reside in some other area.
Id. at 443-44.
We again addressed this issue in a 1994 opinion following an amendment to Neb. Rev. Stat. § 32-303 requiring that candidates for election to the Public Service Commission "be residents of the district from which they seek election." Op. Att'y Gen. No. 94005 (January 21, 1994). After discussing our 1978 opinion, we concluded that
 the requirement that candidates for Commissioner be residents of the district from which they seek election, as well as the provision requiring members of the Commission to be residents of the district from which they are elected, requires only that candidates or elected members have or maintain their domicile or residence in the district. While candidates or members must maintain their domicile or residence in the district from which they seek to be elected or are elected to represent, these requirements do not preclude Commissioners from physically residing at any location in the state.
Id. at 4.[3]
Based on these prior opinions, we conclude the requirement in §77-5004(1) that a Commissioner representing a congressional district be a "resident" of the district does not require the Commissioner to physically reside in the district after appointment. While the Commissioner must retain his or her domicile in the district, this does not preclude the Commissioner from physically residing elsewhere. Thus, while a Commissioner may certainly choose to physically live in the district they represent after appointment, they are not required to do so in order to satisfy the requirement of § 77-5004(1) that they be a "resident" of the congressional district.
Time spent by an employee in traveling to and from their usual place of work is not considered "work" time. In view of the fact that Commissioners may, regardless of whether or not they are appointed to represent a congressional district, live any place they choose, travel time by a Commissioner to and from the Commission's principal office does not constitute "work" time. We recognize that the Legislature has determined to allow Commissioners to receive reimbursement for travel expenses from a Commissioner's "primary residence" to the Commission's office. Neb. Rev. Stat. § 77-5004(8) (Cum. Sup. 2002). This does not, however, mean that time spent traveling by a Commissioner to and from their residence to the Commission's office is "work." Rather, it simply means that the Legislature has deemed it appropriate to allow Commissioners to receive reimbursement for what normally is considered a personal expense. In our view, time spent traveling by a Commissioner to the Commission's office in Lincoln is not "[r]egular work" for purposes of applying the prohibition in § 84-1001(2) against performance of work by employees on paid holidays, Saturdays, or Sundays, regardless of whether the Commissioner is appointed to represent a congressional district or serves as the at-large Commissioner. Our conclusion does not mean that Commissioners must be compelled to travel on these days. The manner of scheduling Commission work is one which necessarily resides in the discretion of the Commission, and is a matter of internal management policy. All that is required by § 84-1001(1) is that work performed must amount to no less than forty hours in any week in which there is no paid holiday.
Very truly yours,
 JON BRUNING Attorney General
 L. Jay Bartel Assistant Attorney General
Approved by:
____________________________ Attorney General
[1] While your request letter refers only to the definition in §81-1321 pertaining to sick leave, the same language excluding a "head" of a "board or commission" is used in the definition of "state employee" for vacation leave purposes in Neb. Rev. Stat. § 81-1328 (1999).
[2] We note that Neb. Rev. Stat. § 84-1004 (1999) provides:
 The Governor shall have authority, after conferring with the employing officers concerned and with the employees, to make sections 84-1001 to 84-1005
effective to employments in any board, commission, department, or institution at any time on or after January 1, 1958.
There may be some question as to whether §§ 84-1001 to 84-1005 are effective as to boards, commissions, departments, or institutions until after the provisions are made effective by action of the Governor. See Roth v. Lieske, 189 Neb. 216, 219, 201 N.W.2d 846, 847 (1972) (Rejecting claim for overtime compensation by State Patrolman for work in excess of forty hours per week, finding Neb. Rev Stat. § 84-117 inapplicable, and noting "[t]he record [did] not disclose that the Governor ha[d] ever made Chapter 84, article 10 . . . effective for the state patrol.") The scant history of the original legislation establishing the basic work week indicates the act was intended to allow for a reduction from a forty-four hour work week to a forty hour work week, granting the Governor initial authority to determine if departments were in a position to move to a forty hour work week under their budget at the time the act was adopted. Committee Statement on LB 100, 68th Leg. 1 (April 25, 1957) It is our understanding that the basic work week provisions have been considered effective as to state officers and employees, including members of boards or commissions required to work full-time, and we find no compelling reason to adopt a contrary interpretation.
[3] These opinions were also discussed in our informal opinion to TERC addressing the reimbursement of travel expenses for Commissioners prior to adoption of the 2001 Neb. Laws, LB 32, authorizing Commissioners to receive reimbursement of travel expenses and, in the case of Commissioners having a residence more than eighty miles from the Commission's office, reimbursement of living expenses. Op. Att'y Gen. No. I98-009 at 1-3. (March 11, 1998).